# AUGUST HAHN v. MARY LOU HAMMERSTEIN et al., Appellants.

### In Banc, November 17, 1917.

1. **WILL CONTEST: Action at Law.** A will contest is a statutory legal action triable by a jury, whose verdict, if supported by substantial evidence on the issues properly submitted, is conclusive on appeal, absent error in the trial and in the giving and refusal of instructions.

2. **ILLEGITIMATE CHILD: Right to Contest Will.** Unless the plaintiff can prove a lawful marriage between testator and his mother, either before or after his birth, and thus establish his heirship and consequent right to attack the will, he must establish, in some other way, a status giving him a financial interest in testator's estate which would be benefitted by a setting aside of the will. No such interest can arise from the fact that he is the natural but illegitimate child of the testator, for in such case he has no heritable right except through his mother.

3. ———: ———: **Financial Interest: Devisee Under Former Will.** No such financial interest in testator's estate as authorizes him to contest the will is established by a showing that he was the devisee in a former will which was taken by testator after its execution into his own possession and kept until it was destroyed by him prior to the execution of the will in contest.

4. **TESTAMENTARY CAPACITY: Tests.** The tests of testamentary capacity are: first, the testator must understand the ordinary affairs of his life; second, he must know both the nature and extent of his property and the persons who are the natural objects of his bounty; and, third, he must know that he is disposing of his property in the manner and to the persons mentioned in the will. Tested by these rules, the testator, aged eight-eight, had sufficient capacity to make the will in suit.

5. ———: ———: **Application of Tests: Old Age.** A failure of memory resulting from old age or sickness, forgetfulness of the names of persons testator has known, idle questions, a requiring of the repetition of information, personal eccentricities and oddities, are not evidence of such mental disease and deterioration as render testator incapable of disposing of his property by will.

*Held*, by GRAVES, C. J., dissenting, that the court should not take single facts and say that each, standing alone, is insufficient to justify the submission of mental incapacity to the jury, but that if the combined circumstances tend to show incompetency, the question should be submitted to them; and that

the fact that the will was made in April and the testator died in August of softening of the brain, a rather slow but progressive disease, is a strong circumstance tending to show mental incapacity.

6. ————: ————: **Old Age, Fall and Fainting Spells.** The fact that at the age of eighty-five testator made a misstep on the stairway and fell, striking on his head, the fall producing unconsciousness, and that following the fall he was subject to fainting spells, during which he could remember nothing until he got over them, and that his memory grew less distinct as his age advanced, did not deprive him of the power to will his estate, provided after the fall he was still able to attend to his ordinary affairs as usual and otherwise at the time he actually made the will possessed the qualifications of competency as defined in the accepted test rules.

7. ————: ————: **Miserly Conduct.** Miserly conduct in hoarding money, or keeping it on his person or in his room, or piling it up in a safe deposit box, does not legally detract from testator's capacity to make a will.

8. ————: ————: **Mistakes in Money Calculations: Fault of Memory.** The fact that the testator was mistaken as to the amount of money he had on a certain occasion deposited in a bank was a mere fault of memory, and does tend to prove a lack of testamentary capacity.

9. ————: ————: **Coarse Habits.** Testimony that in his old age testator was occasionally very lightly clad in summer time; that at one time he was seen in a state of nudity; that when reproached about the impropriety of his dress, he replied it was hot; that he was rough, strong in mind and physical constitution, coarse in habits and unrefined in tastes, miserly in disposition and vulgar in behavior, does not tend to establish testamentary incapacity at the time of making the will.

10. ————: ————: **Apoplexy: Soundness on Date of Will: Hypothetical Questions.** The facts that a few months prior to making the will, and again a few months after, testator, eighty-eight years of age, had a fainting spell and a slight attack of apoplexy, and could give to his physician no intelligent statement of the history of his illness or of his condition, were not a sufficient basis for hypothetical questions relating to his testamentary competency propounded to experts, first, because of their intrinsic lack of probative force, and, second, because the undisputed testimony was that on the day the will was written, in pursuance to a prior appointment, he spoke freely and without reserve of his purposes in making the will, dictated its contents and approved and signed its draft, and the circumstances of his condition on that day as established by that testimony were omitted from the hypothetical questions.

11. ————: **Undue Influence.** The facts that the testator, a very old man, whose wife had long been dead, in his will disposing of an

estate valued at fifty-seven thousand dollars, gave three hundred dollars to a woman who had rendered him many personal services, in consideration that she take care of his burial ground, gave the bulk of his estate to his daughter, and named her son by a former marriage as executor, who the evidence shows was chosen because of his business training and abilities and whom he placed in management of his affairs after the will was made but to whom he gave nothing, do not tend to establish undue influence on the part of any of them.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer*, Judge.

REVERSED.

*Jesse M. Owen, W. L. Colt, Jesse H. Schaper* and *Casey & Wright* for appellants.

(1) Give to the facts, circumstances and conditions their fullest force, they offord no proof of the fact of marriage between Joseph Ehreiser and plaintiff's mother, nor do they afford the slightest basis from which a marriage might be reasonably and fairly inferred. Mooney v. Mooney, 244 Mo. 372; Conner v. Railroad, 181 Mo. 397; Higgins v. Railroad, 197 Mo. 300. Plaintiff could derive no financial interest in the estate of Joseph Ehreiser from the fact that plaintiff might have been the natural but illegitimate child of Joseph Ehreiser, because both at common law and under the statute no heritable right is given plaintiff except through his mother, Johanna Hahn. R. S. 1909, sec 340; Moore v. Moore, 169 Mo. 432. Respondent wholly failed to make out a prima-facie case on the issue of his legitimacy and the instruction in the nature of a demurrer to the evidence offered by appellants at the close of all the evidence should have been given. Mooney v. Mooney, 244 Mo. 372; Watson v. Richardson, 110 Iowa, 673; Markey v. Markey, 108 Iowa, 373; 17 Cyc. 817. The law presumes that testator destroyed the prior will with the intention of revoking the same before the execution of the will in suit; this presumption stands in the place of positive proof. Hamilton

v. Crowe, 175 Mo. 634; Willitt's Estate, 46 Atl. 519;
Woerner, Law of Administration (2 Ed.), 91, 95; 2
Schuler on Wills, sec. 1084, p. 987.　　(2)　There was no
substantial evidence of testamentary incapacity. Holton
v. Cochrane, 202 Mo. 410; Roberts v. Bartlett, 190 Mo.
696; Winn v. Grier, 217 Mo. 420; Sayre v. Trustees, 192
Mo. 95; Southworth v. Southworth, 173 Mo. 59; Brink-
mann v. Rueggesick, 71 Mo. 553; Sehr v. Lindemann, 153
Mo. 276; Von de Velt v. Judy, 143 Mo. 364; Riley v.
Sherwood, 144 Mo. 365; Giboney v. Foster, 230 Mo. 131.
There was no evidence to show that Ehreiser had any
mental failing whatever. There was not even evidence
that he acted "childish" or "funny." The evidence must
be substantial. Mere· forgetfulness, or peculiarities and
eccentricities of character of the testator, are not
sufficient. Fulbright v. Perry County, 145 Mo. 443. Im-
perfect memory, caused by old age or sickness, forget-
fulness of names, and idle questions requiring repetition
of information, will not establish incompetency. Mc-
Fadin v. Catron, 120 Mo. 252; McFadin v. Catron, 138 Mo.
197; Riley v. Sherwood, 144 Mo. 354; Sehr v. Lindemann,
153 Mo. 288.

*James Booth* and *John W. Booth* for respondent.

(1) Legitimacy of a child is properly proven by the
proof of the marriage of its parents and the birth of the
child after the marriage. In order to make proof of the
facts of marriage of the parents and of the subsequent
birth of the child it is not necessary that the evidence of
the facts should be made by means of writings or of any
official record, or certificate, or by direct and positive
testimony; if the evidence be such that if from a con-
sideration of all the facts and circumstances in evidence
in.the particular case, a jury may reasonably believe that
the parents were married, and the child born to them
thereafter, the question of legitimacy should when prop-
erly in the case be submitted to the jury. In this case
the facts were controverted but there was substantial
evidence in support of the legitimacy. The jury found for

respondent, and the court approved their verdict. In all this there was no error. Mooney v. Mooney, 244 Mo. 372. (2)    Appellants in their brief, by way of argument of the proposition as they state it that respondent is not "a person interested" in the probate of the will in controversy, wander to the proposition that the evidence on the trial showed a state of facts, on which the law presumes a revocation of the will of 1905. This is erroneous, and ignores the evidence of the impaired mind of the testator, and the evidence tending to show the existence of the will up to the time testator's mind became so impaired that he was no longer competent to make a will and tending to show that the defendant, Wm. Hammerstein, obtained it from the testator ostensibly for safe keeping and made way with it.    (3)    The evidence in this case tending to show opportunities of some of the defendants to have possessed themselves of the will of 1905, testator's statements, as, for example, his statement that he took the same to Hammerstein to keep for him, are admissible in evidence on the issue of revocation, together with other evidences, favorable to the theory that the testator did not revoke it. Turner v. Anderson, 236 Mo. 523.    (4)    Respondent's instruction as to the test of testamentary capacity, is unobjectionable. Naylor v. McRuer, 248 Mo. 462; Andrew v. Linebaugh, 260 Mo. 623; Ray v. Westall, 267 Mo. 130; Bensberg v. Washington University, 251 Mo. 659, delusions at 659 to 661.    (5) Respondent's instruction is in line with the law concerning undue influence. Wendling v. Bowden, 252 Mo. 647; Naylor v. McRuer, 248 Mo. 432; Bensberg v. University, 251 Mo. 641; Byrne v. Byrne, 250 Mo. 632; Thomas v. Thomas, 186 S. W. 993; Grundman v. Wilde, 255 Mo. 109. (6)    The facts alleged in respondent's petition are such that, whether or not he be an heir of Joseph Ehreiser he has a pecuniary interest entitling him under the laws of this State to prosecute this action. Gruender v. Frank, 267 Mo. 713; State ex rel. v. McQuillin, 246 Mo. 691. (7) Judicial notice will not be taken of the laws of a foreign country. It follows that since respondent was born in the Grand Duchy of Baden prior to the year 1845, of par-

ents who were inhabitants of the Grand Duchy of Baden, and there is no evidence in this case of what the laws of Baden relating to solemnization and recording evidences of marriage were, the question of the legitimacy of plaintiff was a proper one to be by the court left to be determined by the jury on all the evidence admitted on the trial. Charlotte v. Chouteau, 25 Mo. 465.

BOND, J.—I. In April, 1911, Joseph Ehreiser, eighty-eight years of age, executed his last will. On August 28, 1911, the testator died after a ten days' illness of softening of the brain, contributed to by cerebral hemorrhage.

The will and codicil were probated September 8, 1911. In November, 1912, this action to contest the will was brought by August Hahn, who claims to be a son and heir of the testator, and also that under a prior will executed in 1905 he was a devisee of about one-half the estate of the testator, which latter will was revoked by the one executed in 1911.

The grounds of the action are testamentary incapacity and undue influence, alleged to have been exerted by the defendants Louisa Letter, a daughter of the testator, to whom and her children by a former husband, he devised the bulk of his estate, Mrs. Emma Kleissele and William Hammerstein, who was named as executor of the will contested.

It is alleged in the petition that after the making of his former will in 1905, the testator became incompetent to manage his affairs and that his daughter, Louisa Letter, Emma Kleissele and William Hammerstein induced him to put the management of his business affairs in the hands of William Hammerstein, and through undue influence procured the execution of the last will in 1911.

On the first trial of the case the jury failed to agree and on the second trial rendered a verdict for the plaintiff, from which defendants duly appealed.

The evidence shows that the testator Joseph Ehreiser was born March 1, 1823, in Eisénthal, a small

town in the grand duchy of Baden, Germany; that the plaintiff is the son of one Johanna Hahn and was born on March 1, 1845. There is no record of a ceremonial marriage between Joseph Ehreiser and Johanna Hahn, but there is a record of the date of the birth of the plaintiff and the date of his baptism on March 3, 1845. This record recites that he was the "illegitimate son" of his "unmarried" mother, giving the names of her mother and father and their occupation.

About a year and one-half after the birth of August Hahn, Joseph Ehreiser fled from Germany as the result of a killing on his part growing out of a fight following a dance. He settled in America about 1852, and there married Magdalena Rutschmann, who bore him a daughter named Louisa, now the defendant Louisa Letter. Shortly after the death of his wife Magdalena, he married Eva Beckerly, who lived with him until her death at Pacific, in 1897. No children were born of that marriage.

In 1861, the plaintiff August Hahn came to America and made his home with an uncle, Frank Hahn, at Kansas City, Missouri. Some time after he left Germany his mother Johanna Hahn married one Wurtz. A child Amelia was born of that union, where after the mother, father and child also came to Kansas City.

In 1866 plaintiff, August Hahn, on returning from a trip to St. Louis, stopped at Pacific and called upon Joseph Ehreiser. Plaintiff testified that Joseph Ehreiser told plaintiff he was his son and stated that he had married his mother in Germany and that "she was a good woman." Plaintiff returned to Kansas City where he continued to live and reared a family, engaging in the saloon business. Joseph Ehreiser was called to Kansas City at one time to attend a funeral, on which occasion he visited plaintiff at his saloon, but did not go to plaintiff's home, nor meet any of the members of his family. Plaintiff made several visits to Pacific, Missouri, to see the testator and during such visits was sometimes referred to by the testator as "his boy."

About a year before the death of the testator he caused the local bank at Pacific to send plaintiff a cashier's check for $1600.

The testator at the time of his death possessed about fifty-seven thousand dollars, which he had earned by habits of rigid economy as a merchant and as a money lender. He was a stockholder, director and vice-president of one of the local banks at Pacific. Some three years prior to his death he suffered a fall from the stairs leading to the second story of a house which he had rented to Mrs. Thomas, he having reserved two rooms on that floor for his own use, requiring the tenant, Mrs. Thomas, to care for him and furnish his food. As he grew older his suspicions seem to have been very easily aroused and he often declared that some person was trying to steal his papers and that an attempt had been made to chloroform him. He grew careless in his dress and at times wore little, if any, clothing.

On March 25, 1911, the testator sent for William Hammerstein, whom he had known for many years and who had long been an officer in the Bank of Commerce of St. Louis, and informed him that he desired to make a will and wished Mr. Hammerstein to draw it. Mr Hammerstein replied that testator should get a lawyer. The testator declined to do this, and thereupon Hammerstein agreed to draw the will and fixed the fourth day of April as the day when he could come out to Pacific, for the reason that it fell upon a holiday. Before the drawing of the will in pursuance of this request, the following conversation took place between the two:

" 'Mr. Ehreiser, I have heard a great many rumors around town about your having a son, and if I am to draw this will for you I want you to answer one question.' And he says, 'All right,' and I says, 'I want you to answer me that question truthfully' and he says, 'well, what is it?' And I says, 'Mr. Ehreiser, I have heard that you had a son by the name of August Hahn; is August Hahn your son?' He looked at me for a few seconds and says, 'So sure as there is a God in heaven, no,' he says, 'I have not many more years to live, and so

sure as there is a God in heaven, August Hahn is not my son.' 'Well, I said, 'Now Mr. Ehreiser, I will tell you why I asked you that question. If August Hahn is your son, it is no more than right and proper that you should make some provision for him of a substantial nature, monetary consideration.' 'Yes, yes,' he says, 'I know that, but August Hahn is not my son.' ''

On April 4, 1911, Mr. Hammerstein drew the will in contest, which bequeathed to Emma Kleissele $300, to August Hahn $1, and the remainder of his property to his daughter Louisa Letter and her children, William Hammerstein and Louisa Letter being named as co-executors. This will was delivered to William Hammerstein for safe-keeping, and on April 11, 1911, a codicil was executed, the purport of which was to make William Hammerstein sole executor, without bond. This codicil was also given to Mr. Hammerstein for safe-keeping. On April 22, 1911, Joseph Ehreiser executed a general power of attorney to William Hammerstein to transact all business matters for him, which he continued to do up to the time of the death of Ehreiser.

On the same day upon which this suit was brought, plaintiff filed an application in the probate court for the admission to probate of the will of 1905. The court rejected said application.

II.    A will contest is a statutory legal action triable by a jury whose verdict, if supported by substantial evidence on the issues properly submitted, is conclusive on appeal in the absence of any intervening error **Legal Action.** on the trial or in the giving or refusal of instructions. [Winn v. Grier, 217 Mo. l. c. 430; Sehr v. Lindemann, 153 Mo. l. c. 288; Hayes v. Hayes, 242 Mo. l. c. 168; Roberts v. Bartlett, 190 Mo. l. c. 695, 696.]

One of the vital questions in this case is whether plaintiff is the child of Joseph Ehreiser, born after lawful wedlock between him and Johanna Hahn, the mother of plaintiff. As it is not claimed that any such **Illegitimate Child.** marriage took place after the birth of plaintiff (R. S. 1909, sec. 341) the only basis of the legitimacy of plaintiff must rest upon proof

of a lawful marriage between Joseph Ehreiser and Johanna Hahn in Eisenthal, Germany, before March 1, 1845, the date of plaintiff's birth.

Unless plaintiff can thus establish his heirship and consequent right to attack the will, he must establish, in some other way, a status giving him a financial interest in the estate of the testator which would be benefited by the setting aside of the will. [R. S. 1909, sec. 555; Gruender v. Frank, 267 Mo. 713; State ex rel. v. McQuillin, 246 Mo. 674.] No such interest could arise from the fact that plaintiff might have been the natural but illegitimate child of Joseph Ehreiser, for in such case he would have no heritable right except through his mother Johanna Hahn. [R. S. 1909, sec. 340; Moore v. Moore, 169 Mo. 432.] Neither was such financial interest shown by plaintiff through his claim as the devisee of a prior will, and his application for the probate thereof (which was rejected.) The record in this case shows that said prior will was taken by the testator from his safe-deposit box about one year before he made the present will, and there is not a scintilla of evidence in the record that it ever left the possession of the testator from that time. It was not found among his papers, nor elsewhere after his death, and he stated to the executor, Hammerstein, that he had destroyed it. Plaintiff gave no evidence whatever, contradicting the force of the legal presumption of a revocation arising upon these facts and circumstances. Indeed in his application for the probate of said will, plaintiff admitted that it had been destroyed. In this dearth of contradictory evidence, the legal presumption obtains that the testator destroyed the prior will before making the one now contested. Hence plaintiff can deduce from that will no interest in the property devised in the one under review which would qualify him under the statutes to bring this action. [Hamilton v. Crowe, 175 Mo. l. c. 647, 648; Willitt's Est., 46 Atl. 519; Woerner, Law of Adminstration (2 Ed.), 91, 95; 2 Schouler, Wills (5 Ed.), sec. 1084, p. 987.]

It follows that the case for plaintiff, as to his financial interest in the setting aside of the present will, depends

solely upon proof by him of his status as a legitimate son and heir at law of Joseph Ehreiser, and unless the record contains substantial evidence sustaining the claim of plaintiff on that preliminary inquiry, he had no authority to institute this action.

In the event plaintiff's right to sue should be sustainable under the facts in this record, it would still follow that the verdict of the jury setting aside the will would have to be reversed, unless the Testamentary record discloses some substantial evidence Capacity. that the testator at the time of the execution of his will had no legal capacity to perform that act, or that his will when made, did not reflect his own wishes in the disposal of his property, but expressed the different designs and objects of other persons having such dominance over his mind as to enable them to influence him to make a will which he would not have done had he been free from such foreign control. [Hayes v. Hayes, 242 Mo. l. c. 169, and cases cited.] In short, that the instrument when made was not his will, but was the will of others.

As these questions of testamentary incapacity and undue influence go to the root of the case in any view which may be taken of the suable capacity of the plaintiff, we will first dispose of them. In that connection it may not be amiss to state the rule of law as to the capacity of a testator to make a valid will under the statutes authorizing such method of transmission of property. [R. S. 1909, secs. 535, 536, 537.] Wills devising lands, both in this country and England, are rights secured by statute or act of Parliament; they had no recognition as such at common law and for about five hundred years there was no English statute providing for the making of wills. [40 Cyc. 996, 997; 4 Kent, 504; Stats. 32, 34, Henry VIII.] Our statutes on the subject have received repeated interpretations and constructions by the courts and certain fixed rules gauging the capacity of the testator to make a will, though variously expressed in some of the cases, have been recognized in all of the decisions as prescribing the follow-

ing tests of testamentary capacity at the time of the doing of the act: First, the testator must understand the ordinary affairs of his life; second, he must know both the nature and extent of his property and the persons who are the natural objects of his bounty; third, he must know that he is disposing of his property in the manner and to the persons mentioned in his will. The foregoing are the essential elements of testamentary capacity under the statutes and decisions of this State. Different methods of expression are occasionally used, but the rule as above stated is the correct measure of the testamentary capacity of the maker of a will in this State. [Holton v. Cochran, 208 Mo. l. c. 410; Roberts v. Bartlett, 190 Mo. l. c. 696; Winn v. Grier, 217 Mo. 420; Sayre v. Trustees of Princeton University, 192 Mo. 95; Southworth v. Southworth, 173 Mo. 59; Brinkman v. Rueggesick, 71 Mo. 553; Sehr v. Lindemann, 153 Mo. 276; Von De Veld v. Judy, 143 Mo. l. c. 364; Riley v. Sherwood, 144 Mo. l. c. 365; Gibony v. Foster, 230 Mo. l. c. 131.]

In the application of this rule it has long been adjudged that a failure of memory resulting from old age, or sickness, "forgetfulness of the names of persons one has known, idle questions requiring a repetition of information, personal eccentricities and oddities are not evidence of such mental disease and deterioration as render one incapable of disposing of his property by will." [Gibony v. Foster, 230 Mo. l. c. 131; Winn v. Grier, 217 Mo. 420; Southworth v. Southworth, 173 Mo. 59; Bensberg v. Washington University, 251 Mo. l. c. 658.]

There is nothing in any of the testimony offered on behalf of plaintiff which takes the case out of the application of this rule. Although the testator at the time of his decease had attained great age, still it is undisputed (except in the particulars referred to by the evidence adduced for plaintiff to be discussed hereafter) that he was a man of unusual vigor, of body and brain, and that he thoroughly comprehended the affairs of business occurring in the course of his respective callings as lumberman, merchant and lender of

money, and transacted all of his own business until after the execution of this will. His ability to transact his business affairs personally, with judgment and success, seems to have been beyond question. Some time after making his will he executed a power of attorney (April 22, 1911) at which time he also produced and turned over to his appointee a considerable sum of cash and gave him specific directions to loan it to the Boatman's Bank in St. Louis, for the reason that it paid four per cent on such certificates. Thenceforward he attended to all matters of a strictly personal nature until a few days before his death. It is not claimed by respondent that the testator was at all incompetent to make a will in 1905 (when the prior will was executed. The evidence adduced since that date relating to this point will be now adverted to.

It was shown that about February, 1908, the testator made a misstep on a stairway and fell, striking on his head, producing unconsciousness. He was rubbed by Mrs. Thomas until he recovered himself and received one visit from Dr. Booth and soon thereafter he was able to attend to his ordinary affairs as usual, collecting loans, making interest-bearing deposits and attending a meeting of the board of directors of a local bank, of which he was elected vice-president in March, 1911. These duties he attended to until a few days before his death.

Conceding that following his fall and his increasing years, the testator was, as stated by Mrs. Thomas, subject to fainting spells, during which he could remember nothing until he got over them, and that his memory grew less distinct as his years advanced, such facts would not deprive him of the power to will his estate, provided he still possessed the qualifications of competency as defined above when he actually made his will. Nor was he deprived of that power by evidence showing that it was his custom to keep some money on his person and in the rooms where he lived. The evidence, however, disclosed that when one of his fellow-directors in the bank spoke to him about the risk of such practices, he made an appointment

and put $2500 of his private hoard in the form of an interest-bearing loan to the bank and $740 in his safe-deposit box. It is clear that his conduct in this respect only evidenced a miserly instinct and did not logically or legally detract from his capacity to make a will. Attention is also called to the fact that at one time the testator deposited $2000 in the bank and insisted afterwards that he was entitled to an additional credit of $390, in paper money, stating that he recollected taking both sums to the bank and that Mrs. Thomas had counted the money with him. His statement as to the counting of the money previous to taking it to the bank in the presence of Mrs. Thomas, was confirmed by her. It seems the mistake as to this deposit arose from the fact that a part of it was gold coin and the other paper money. The testator thought there were two thousand dollars in gold and $390 in paper, whereas there were only two thousand dollars of both. The evidence shows that pending the controversy as to this deposit, he deemed the cashier had not accounted for the $390 of paper money delivered to the bank and spoke of him in harsh terms. Assuming that the testator's recollection was inaccurate in this matter, that fact would not tend to prove a lack of testamentary capacity. Such a mistake might be made by an average business man without creating a suspicion of lack of intelligence. It was at most a mere fault of memory.

The evidence tended to show that in his old age the testator was occasionally very lightly clad in the summer time; that at one time he was seen in a state of nudity; that he was coarse in his conduct and when appealed to about the impropriety of his dress, replied that it was hot.

In February, 1911, testator had a fainting spell—a slight attack of apoplexy. Dr. Booth, who was called in to see him, stated that he could not get a clear statement from the patient as to the history of his illness, nor as to his condition; that the patient would not, or could not tell. The evidence was that after his recovery from this attack he attended to his business as usual until July, 1911, when the doctor was again called in to see him for a faint attack of apoplexy; when observing that he had

difficulty in walking, the doctor objected to his going up and down steps. The doctor could get no satisfactory explanation as to his condition from the testator, who said he though somebody had put something in the room and drugged him and that he felt badly thereafter. He did not recover from this illness, but died in August, 1911.

These incidents were relied upon by respondent to establish the mental incapacity of the testator, in connection with the answers of two physicians upon the putting to them of a hypothetical question reciting the circumstances supposed by appellant to relate to the competency of the testator. After hearing the question read the two doctors, upon the assumption of the truth of the hypotheses contained in the question, said they would not consider the testator of sound mind on April 4, 1911, when the will was executed. In addition to the lack of probative force intrinsic in the assumptions contained in the hypothetical question, the record shows that it contained no reference to the uncontradicted testimony as to the conduct and behavior of the testator on the day Mr. Hammerstein came, according to previous appointment, to draw his will. The undisputed evidence is that on the occasion in question, a number of persons were present and the testator spoke freely and without reserve of his purposes in making the will, dictated its contents and approved and signed the draft. In the circumstance of the omission of this undisputed testimony bearing on the competency of the testator in the hypothetical question, and the evidentiary impotency of the facts and circumstances recited in the question, we hold the answers of these two physicians should not have been admitted in evidence. [Root v. Railway, 195 Mo. l. c. 377; Fullerton v. Fordyce, 144 Mo. l. c. 531; Russ v. Railway, 112 Mo. l. c. 48; Mammerberg v. Street Ry. Co., 62 Mo. App. l. c. 567.] One of the physicians had attended the testator in the few instances of his illness, and this physician was not asked his judgment or opinion of the sanity of the testator based upon the facts observed by him during social acquaintance; for he, equally with any lay witness, might express an opinion on that subject upon a

statement of facts showing the basis of such opinion.
[Farrell's Admr. v. Brennan's Admx., 32 Mo. l. c. 334;
State v. Erb, 74 Mo. l. c. 205; State v. Speyer, 194 Mo. l.
c. 468; State v. Klinger, 46 Mo. l. c. 229; Cram v. Cram,
33 Vt. 15; 17 Cyc, 139, and cases cited.] Indeed, respond-
ent did not call any witness to prove permanent insanity
on the part of the testator at any time, or adduce any
testimony that he was temporarily insane on April 4, 1911.
As to the occurrences on that date, the testimony for the
proponents of the will is clear and positive to the effect
that the testator possessed full knowledge of his affairs,
gave specific directions for the execution of his will, was
able to attend to his business, knew who were the natural
objects of his bounty and designated the persons named
in his will to enjoy the devises therein and point-blank
refused to make any bequest to Mrs. Thomas, for the
reason that he had paid her fully for all of her services.
The full tendency of the proof adduced on behalf of re-
spondent was to show only that impairment of memory
and decline of mental vigor which often accompanies,
under biological laws, the impairment of bodily strength
in very old persons and which experience teaches may
coexist with the retention by the subject of full intelli-
gence and the substantial use of his mental faculties.
Neither singly nor in conjunction did the circumstances
adduced by respondent tend to show any lack of the es-
sential requisites required to make a valid will under
the settled law of this State. The testator was a rough
man, of strong mind and physical constitution, coarse in
his habits and unrefined in his tastes, miserly in his dis-
position and vulgar in his behavior; but the evidence
totally fails to show any basis for a reasonable inference
that he was, on April 4, 1911, lacking in that degree of
competency prescribed by law for the making of a will.

We must hold, therefore, that the learned trial judge
erred in submitting to the jury the issue of the com-
petency or testamentary incapacity of the testator to
make the will in question.

III. Neither is there any evidence in this record which
justified the submission of the issue of undue influence

under the established principles of law defining the meaning of that phrase. [Andrew v. Linebaugh, 260 Mo. l. c. 661; Fullerton v. Fordyce, 144 Mo. 519; Maddox v. Maddox, 114 Mo. l. c. 48.] It is charged that this dominance over the mind of the testator was the result of the joint efforts of his daughter, Mrs: Letter, the executor of the will, Mr. Hammerstein and Mrs. Kleissele. Mrs. Kleissele, who, the evidence shows, had rendered many personal services to the testator during a long acquaintance, was given $300 in consideration of taking care of his burial ground. Mrs. Letter, the daughter of the testator, was given the bulk of his estate. The executor was given nothing, but was selected to take the trust, as the evidence tends to show, on account of his training, experience and ability as a business man. There is not a fact in the record which tends to show any concerted action on the part of any of these three persons to induce the testator to make any of the bequests contained in the will. The only suggestion made to him by the executor, as has been shown, was that if the respondent was the natural child of the testator, he ought to make some provision for him. This the uncontradicted evidence shows the testator declined to do in his will, though the record shows that about a year before the making of the will the testator sent a sum of money to the respondent. We do not see the slightest evidence in this record reflecting on any one of the persons charged with unduly influencing the testator in the disposition of his estate. The facts shows that Mr. Hammerstein did not manage the testator's business affairs prior to the making of the will nor subsequently, until Mr. Ehreiser sent for him and handed him two thousand dollars to deposit in the bank and appointed him his attorney in fact to attend to his business matters. None of the persons charged occupied any fiduciary relation to the testator before the making of the will.

Having reached the conclusion that the record does not show any substantial evidence, either that the testator was mentally incapable of making his will at the

time and date of its execution, or that his mind was then subject to the influence of the defendants so that the will in question reflected their wishes and not his own volition, we are constrained to hold that the judgment in this case must be reversed. It is so ordered.

PER CURIAM:—The foregoing opinion of BOND, J., in Division No. One is adopted as the opinion of the Court in Banc. *Walker, Faris,* and *Woodson, JJ.,* concur; *Graves, C. J.,* dissents in separate opinion; *Blair* and *Williams, JJ.,* dissent.

GRAVES, C. J. (dissenting)—I think there is sufficient evidence in this case to justify the submission of the case to the jury upon the question of mental incapacity. This court has long since departed from the theory of taking single acts, and saying that each, when standing alone, is not sufficient to justify the submission of the question of mental incapacity. If these combined circumstances tend to show mental incapacity, it is a question for the jury.

The whole question has been so recently and fully gone over by LAMM, C. J., in Turner v. Anderson, 260 Mo. 1. c. 16, that we will not reiterate. Under the facts in this record the present opinion is in full accordance with the dissenting opinion in Turner v. Anderson, but not in accord with the majority views in that case. The very fact that the will was made in April and the testator died in August of softening of the brain, a rather slow, but progressive disease, is a strong circumstance tending to show mental incapacity. This with other recited facts justify the submission of that question. We should not take a step backward, and depart from the rulings in Turner v. Anderson, supra; Wendling v. Bowden, 252 Mo. 1. c. 692; Teckenbrock v. McLaughlin, 209 Mo. 1. c. 538, and Mowry and Kettering v. Norman, 204 Mo. 1. c. 193.

I therefore dissent to the ruling in the majority opinion on this question, and from the result.