ERNEST C. PLATT, Appellant, v. IDA FRAZIER PLATT et al.

Division One, December 19, 1921.

1. **APPEAL: Dismissal: Refusal of Peremptory Instruction: Appellant's Failure to Preserve Evidence: Waiver.** At the close of the trial defendant asked a peremptory instruction directing the jury to return a verdict upholding the will in contest. Said instruction being refused, the case went to the jury upon other instructions on the merits, and the verdict was for defendant, the proponent. Thereupon plaintiff, the contestant, appealed, and filed a bill of exceptions, but does not abstract the evidence, but only states that there was evidence offered by both sides tending to support their respective contentions, but does reproduce the peremptory instruction and the other instructions asked, given and refused. In that state of, the record respondent, under Rule 11, files an additional abstract, in which is set forth in narrative form the entire evidence contained in the bill of exceptions, and also a motion to dismiss plaintiff's appeal because of his failure to abstract the evidence in compliance with Rule 6. *Held,* that, had respondent stood upon her right, her motion to dismiss, especially in view of Rule 13, would require serious consideration; but having preferred to take advantage of her right under Rule 11 to prepare, serve and file an additional abstract supplying the very. omission complained of, she has waived her right to have the appeal dis-

· Platt v. Platt.

missed, and the evidence so supplied will be considered in connection with the instructions and the other assignments.

2. **CONTINUANCE: No Assignment of Error in Motion for New Trial: Made and Denied in Another Division.** Where plaintiff's application for a continuance, based on the absence of a material witness, was filed when the cause was called in the assignment division of the court and was heard and overruled and a bill of exceptions was filed in that division, and thereupon the cause was assigned to another division and the trial was begun by agreement during the same term, a failure to mention in the motion for a new trial, filed in the trial division after verdict and judgment, the alleged error in denying the continuance, precludes a consideration of it on appeal. Although the order denying the application was made in another division of the same court, it did not become a part of the record proper, but continued to remain a matter of exception, and the alleged error in denying the application, in order to be reviewed on appeal, should have been made a ground of the motion for a new trial.

3. **WILL CONTEST: Epilepsy: Instruction: Assumption of Fact.** The trial court did not err in refusing to give an instruction asked by contestant declaring that "it is a matter of common knowledge that epilepsy, whether it be what is known as *grand mal* or *petit mal,* is a mental disease, and is in the arteries or blood vessels of the brain, and the questions to be determined in this case are whether the mind of John H. Platt was so affected by this disease or by Bright's disease, if you believe from the testimony that he had both or either, as to render him incapable mentally of making a will," since it is assumed, as a foundation upon which to consider the case, that said testator was mentally unsound, and there was no evidence to that effect, and it is not a matter of common knowledge that a person who has once had epilepsy and has recovered therefrom continues so mentally unsound that he is not capable of making a will.

4. **Instruction: Interest of Proponent in Estate: No Assignment.** Unless the refusal of the trial court to give a certain instruction is mentioned in the assignment of errors its refusal is not for consideration. But it would not be ruled that the trial court erred in refusing to instruct the jury that "if you should find that the instrument offered as the will of John H. Platt is not his will, his widow, there being no children, would be entitled to one-half his estate," even if its refusal had been among the assignment of errors and could therefore be considered, since the interest of testator's widow in his estate did not affect the only issue in the case, namely, his mental capacity to make the will.

Platt v. Platt.

5. ———: Mental Incapacity: Testimony of Legatee. Where a brother of the childless testator, who received a legacy of one thousand dollars by the will, which he still retained at the time of the trial, answered as guardian for his four minor children, who were also named as legatees to the extent of one thousand dollars each, admitting the testamentary incapacity of the testator, thereby surrendering the minors' interests for the benefit of himself and his brothers, his testimony to the effect that the testator was, for many years before his death, incompetent to transact ordinary business or to make a will, should be considered with care, and in so far as it conflicts with prior acts done by him in his own interest it should receive an interpretation, if possible, consistent with honesty and fair dealing; and therefore it will be assumed, in the absence from his testimony of anything directly manifesting a different intention, that he did not intend to say that during his business transactions with the testator, extending through three years prior to the making of the will, the testator was mentally incompetent.

6. ———: ———: Epilepsy: Bright's Disease: Insufficient Evidence. The evidence shows that in 1893 the testator, then a minor, was treated for a mental and nervous disorder diagnosed as ''idiopathic epilepsy,'' induced by a recent sun stroke, from which he recovered and was discharged in about four months; that during the course of his manhood he was attacked by Bright's disease of the kidneys, which, according to its usual course, caused his death in 1914; that he was married when about twenty-one years of age, but had no children, and by his will, which on its face is the natural act of a perfectly normal man, he gave one thousand dollars to each of four brothers and to four nephews, and five hundred dollars each to his own niece and a niece of his wife and to his mother's church, and the residue of his estate to his wife; that intermittent paroxysms of pain, accompanied by severe and exhaustive suffering, resulted from the Bright's disease and the uraemic poison produced by it; that in the intervals between these paroxysms he transacted his business and lived his social life among his neighbors with more than ordinary intelligence and success; that he had his business well in hand, and managed it with care and skill; that his symptoms incident to Bright's disease became so severe that his physicians advised him to make his will if he desired to give his property to his wife; that the subject of the will was discussed between him and his lawyer, whose professional ability is not questioned; that a week was consumed in preparing the will, during which there were numerous interviews between him and the lawyer, and discussions of the various questions presented and alterations in the experimental drafts; that at the time the will was being

Platt v. Platt.

drawn he named the various legatees and the amount of his bequests to them, and at such times and when it was executed he was careful, attentive and intelligent; and that, during this week, his wife, to whom he gave the greater part of his estate, was sick at the hospital, though recovering from a capital surgical operation. *Held,* that the evidence amply supports the verdict sustaining the will.

7. ———: ———: **Occasional Weakness.** Proof that testator's mind had been occasionally weakened by suffering and disease is not sufficient to avoid a will executed while that condition did not exist.

8. ———: ———: **Comprehension of Property Devised: Half Interest.** The fact that the childless testator, after making certain bequests to his brothers and other relatives and devising the residue to his wife, then declared that "my said wife shall not dispose of my property situated" on a certain street "for a period of ten years after my death," and "I likewise direct that my wife shall not dispose of my real estate" situated on another street "until the expiration of the lease thereof now held by the lessee has expired," although his "property" in the real estate described was only an undivided half interest, does not tend to show that he did not comprehend the extent of his real property devised.

9. ———: **Capacity to Make Will and Contract.** The reasons why a man may be capable of making a will, and yet incapable of making a contract and managing his affairs, are discussed in Paragraph 7 of the opinion.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) Appellant's application for a continuance should have been granted. Moore v. McCullough, 6 Mo. 444; State v. Dewitt, 152 Mo. 76, 85; Nichols v. Grocer Co., 66 Mo. App. 321; Campbell v. McCaskill, 88 Mo. App. 44; Rottman Co. v. Van Frank, 88 Mo. App. 50. (2) Instruction 7 requested by appellant, to the effect that it is a matter of common knowledge that epilepsy is a mental disease and is in the arteries or blood vessels

of the brain, should have been given. 1 Wharton & Stille's Med. Jurisp: (5 Ed.) sec. 34; Brown v. Piper, 91 U. S. 37, 43; Peterson v. Standard Oil Co., 106 Pac. 337, 339; Webster's Dictionary; State v. Main, 69 Conn. 623; Holton v. Cochran, 208 Mo. 314, 411; Austin v. State, 101 Tenn. 563; Com. v. Marzynski, 149 Mass. 68; North Hempstead v. Gregory, 65 N. Y. Supp. 867; Wynehamer v. People, 13 N. Y. 378; State v. Carmody, 91 Pac. 446; Kiernan v. Met. Life Ins. Co., 34 N. Y. Supp. 95. (3) Instruction A given at request of respondent, comments on the evidence, gives undue prominence to particular facts, invades the province of the jury by determining for it what effects certain facts singled out will have upon the issue, and tells the jury that a man may habitually fail to transact ordinary business, be temporarily insane, or suffer from delusions, and yet may be able to understand that he is making a will. The terms of this instruction contradict each other, and are inconsistent with Instruction 1 given at request of appellant, and leave out the words "without the aid of any other person." Tibbe v. Kamp, 154 Mo. 583; Crossan v. Crossan, 169 Mo. 641; Holton v. Cochran, 208 Mo. 422; Andrews v. Linebaugh, 260 Mo. 656. (4) Instruction B for respondent gives an erroneous statement of the law as to the execution of the will, and wrongfully shifts the burden of proof to appellant, if two of the subscribing witnesses have testified to the "sanity" of the testator. Major v. Kidd, 261 Mo. 607, 619. (5) Respondent's instruction C is fatally defective because it requires mental capacity as defined in other instructions. This was defined differently in appellant's Instruction 1 and respondent's Instruction A. (6) Instruction D given for respondent, introduced to the jury the question of whether there was a fair division of property by the will, which was an issue not in the case, and necessarily confused and beclouded their minds by diverting them from the real issue. Major v. Kidd, 261 Mo. 607, 618; Strother v. Milling Co., 261 Mo. 26; Andrews v. Linebaugh, 260 Mo. 663; Degonia v. Ry. Co., 224 Mo. 589; Black v. St. Ry.

Co., 217 Mo. 672; Mansur v. Botts, 80 Mo. 658; Bank v. Murdock, 62 Mo. 73. (7) Error is presumed to be prejudicial; and, error in one instruction is not cured by another correct instruction. Gerber v. Kansas City, 105 Mo. App. 196; Morris v. Grand Ave Ry. Co., 144 Mo. 508; Patterson v. Evans, 254 Mo. 293.

*E. S. McAnany, Lathrop, Morrow, Fox & Moore* and *Cyrus Crane* for respondent.

(1) On the entire record the verdict was for the right party. (a) At the very time the will was executed the undisputed evidence shows that the testator was mentally competent. Von de Veld v. Judy, 143 Mo. 363; Weston v. Hanson, 212 Mo. 248, 268; Andrews v. Linebaugh, 260 Mo. 654; Hays v. Hays, 242 Mo. 170; Coberly v. Donovan, 208 S. W. 53; Hufnagle v. Pauly, 219 S. W. 371; Major v. Kidd, 261 Mo. 620; Benoist v. Murrin, 58 Mo. 322; Jackson v. Hardin, 83 Mo. 175; Riggin v. Westminster College, 160 Mo. 579. (b) The opinion of the only witness who testified that the testator was of unsound mind was worthless because not based on facts, showing dealings, actions, conversations or anything else indicative of such unsoundness. Sehr v. Lindemann, 153 Mo. 288; Gibony v. Foster, 230 Mo. 132; Current v. Current, 244 Mo. 429; Hughes v. Rader, 183 Mo. 705; Riley v. Sherwood, 144 Mo. 352. (c) The court in determining whether or not the verdict was correct may consider the evidence offered by the defense. Hufnagle v. Pauly, 219 S. W. 371; Furber v. Bolt & Nut Co., 185 Mo. 311; Turner v. Anderson, 260 Mo. 30. (d) The evidence of incapacity must be not a mere scintilla, but substantial. Spencer v. Spencer, 221 S. W. 61. (e) Epilepsy is not of itself insanity and there was no proof that it had caused a permanent condition of mental incapacity. Turner v. Anderson, 260 Mo. 23; Wood v. Carpenter, 166 Mo. 465. (f) In many cases the testator was of vastly inferior mental capacity to the testator in this case and yet a verdict upholding the

will was held to have been properly directed by the court. Winn v. Greer, 217 Mo. 454; Sayre v. Trustees, 192 Mo. 95; Archambault v. Blanchard, 198 Mo. 584; Kleinlein v. Krauss, 209 S. W. 937; Goedecke v. Lindhorst, 213 S. W. 43; Southworth v. Southworth, 173 Mo. 73; Plass v. Plass, 205 S. W. 375; Sanford v. Holland, 276 Mo. 457. (2) There was no error in the refusal to grant a continuance. (a) This was not included in the motion for new trial. (b) No diligence whatever was shown in the motion itself. (c) No facts shown justifying a belief that the attendance of the absent witness could be secured at the next term. (d) The evidence was merely cumulative. (e) The court did not abuse its discretion. Valle v. Picton, 91 Mo. 207; State v. Williams, 170 Mo. 204. (3) The matter therein stated, instruction No. 7 requested by appellant, is not such as the court will take judicial notice of. Turner v. Anderson, 260 Mo. 23. The instruction was erroneous within itself, not applicable to the facts of the case and was fully covered by others given on behalf of appellant. (4) Instruction A given for respondent has been approved by this court. Andrews v. Linebaugh, 260 Mo. 656. (a) Sickness or physical incapacity does not disqualify. Sehr v. Lindemann, 153 Mo. 288; Hughes v. Rader, 183 Mo. 705; Brinkmann v. Rueggesick, 71 Mo. 556. (b) Plaintiff's own instructions make the same requirements, as to mental capacity, and therefore no complaint can be made against respondent's. (c) The omission of the word "value" was not error. Pinson v. Jones, 221 S. W. 387. (5) Respondent's instructions B and C are free from error, and appellant's criticism of them is captious and trivial. (6) Respondent's instruction D was merely a cautionary instruction and is fully warranted and approved by the decisions of this court. Benoist v. Murrin, 58 Mo. 322; Hufnagle v. Pauly, 219 S. W. 371; Farmer v. Farmer, 129 Mo. 536; Berberet v. Berberet, 131 Mo. 411.

BROWN, C.—This is a suit to contest the will of John H. Platt, a resident of Johnson County, Kansas.

He died December 21, 1914, leaving a considerable amount of land in Jackson County, Missouri, where this suit was instituted, on the 6th day of November, 1916.

The petition states the formal facts, including the nature and interests of the several parties claiming as heirs of the testator or under the will, as well as the grounds of the contest. It is, omitting caption and signatures, as follows:

"The above named plaintiff, for his amended petition, states that on the 21st day of December, 1914, one John H. Platt, a resident of Johnson County, Kansas, departed this life, leaving as his only heirs at law, his widow, Ida Frazier Platt, one of the above named defendants, and his brothers, Ernest C. Platt, this plaintiff, and defendants Beverly C. Platt, Mortimer R. Platt, and Virgil N. Platt; that on the first day of February, 1915, an instrument of writing which purported to be the last will and testament of said John H. Platt, deceased, was admitted to probate as his last will in the Probate Court of Johnson County, Kansas, and thereafter a duly certified copy of the same and the probate thereof, authenticated as required by Act of Congress, was recorded in the office of the Recorder of Deeds of Jackson County, Missouri, at Kansas City, on the 30th day of March, 1915, and is recorded in said office in Book B1619 at page 314, and a duly certified copy of such record is hereto attached; and by the terms of said instrument there was bequeathed to the defendants, M. R. Platt, Jr., Charles Peake Platt, and John Frederick Platt, the sum of one thousand dollars each, and to the defendant Mary Anna Platt the sum of one thousand ($1,000) dollars, and to the defendant Margaret Elizabeth Frazier the sum of five hundred dollars, and to the Methodist Episcopal Church, South, situated at the corner of 26th Street and Troost Avenue in Kansas City, Missouri, the sum of five hundred dollars, and the defendants George A. Barton, Isaac P. Ryland and J. Lee Porter are the trustees of said church under the laws and regulations of said Methodist Episcopal Church, South, and for that reason are

made parties hereto; and by said instrument there was bequeathed to the plaintiff, Ernest C. Platt, and the defendants Beverly C. Platt, Mortimer R. Platt and Virgil N. Platt, the sum of one thousand dollars each; and also by said instrument there was devised to the defendant Ida Frazier Platt, all the balance of the estate of said deceased, wherever situated, including valuable real estate in Jackson County, Missouri.

"Plaintiff says that said instrument was not the will of said John H. Platt; that many years before said instrument was signed by the said John H. Platt, he suffered a sunstroke which permanently *affected* his brain, so as to weaken his mind, and during said period and up to the time of signing said will he was afflicted with Bright's disease, of which he subsequently died, and also suffered during said period from the disease of epilepsy or epileptic fits, and from other serious diseases all of which seriously affected his brain and injured his mind, and at the time he signed said instrument was just recovering from an attack of epilepsy, and was in a stuporous condition of mind, arising from said disease, and the other diseases above-mentioned, so that he was in such condition mentally as not to be able to execute said instrument, or to make a will.

"Wherefore, plaintiff asks that an issue be made up whether said instrument be the last will and testament of the said John H. Platt, deceased, or not, and plaintiff asks for a judgment and decree that the same is not the last will and testament of the said John H. Platt, and for his costs in this behalf expended."

The widow, Ida Frazier Platt, and her niece, Margaret Elizabeth Frazier, by her guardian, answer by admitting the facts stated in the first paragraph of the petition and denying the second paragraph. The remaining defendants, being the collateral heirs of the testator, join with the plaintiff by admitting all the allegations of the petition.

The will is as follows:

*"The State of Texas, County of El Paso.*

*"Know all Men by These Presents,* That I, John H. Platt, of Johnson County, Kansas, being desirous of settling my worldly affairs while I have strength so to do, do make this my last will and testament, hereby revoking all other wills by me heretofore made.

"First.

"I direct that all of my just debts be paid by my executors hereinafter named as soon after my death as to them may seem practicable.

"Second.

"I give and bequeath to my nephews, M. R. Platt, Jr., Charles Peake Platt and John Frederick Platt, all of Kansas City, Missouri, the sum of one thousand dollars each, in cash, to be paid by my hereinafter named executors to them when they arrive at the age of twenty-one years, which sum my said executors are to invest in interest bearing obligations until they obtain their majority.

"Third.

"I give and bequeath to my niece, Mary Ann Platt, of Kansas City, Missouri, the sum of one thousand dollars; and to my wife's niece, Martha Elizabeth Frazier, of Kansas City, Missouri, the sum of five hundred dollars, with the same directions as above set forth with reference to my nephews.

"Fourth.

"I give and bequeath to the Methodist Episcopal Church South now situated at the corner of Twenty-sixth and Troost Streets in Kansas City, Missouri, the sum of five hundred dollars. This bequest is made out of respect and memory for my deceased mother, Mrs. M. P. Platt.

"Fifth.

"I give and bequeath to my brothers, Beverly C. Platt, Mortimer R. Platt, Virgil N. Platt, and Ernest C. Platt, the sum of one thousand dollars each.

"Sixth.

"The balance of my estate of whatever nature and wherever situate, including real, personal or mixed prop-

erty, I give and bequeath to my beloved wife, Ida Frazier Platt, to be by her used and enjoyed as she may see fit; but I especially provide that my said wife shall not dispose of my property situated in Kansas City, Missouri, on the corner of Sixteenth and Genessee Streets and leased to White and Dreyfoss, for a period of ten years after my death; and I likewise direct that my wife shall not dispose of my real property situated in Kansas City, Missouri, now under lease to the Chespeake Bay Fish and Oyster Company, until the expiration of the lease now held by the lessee thereof.

"Seventh.

"And I especially provide that, if my wife disposes of any of my real property, wherever situate that it shall be for a good and valuable consideration and the proceeds of the sale or disposition thereof shall be reinvested in her name and for her sole use and benefit; and, if this provision of my will shall not be complied with, said property shall revert to my brothers, Beverly C. Platt, Mortimer R. Platt, Virgil N. Platt and Ernest C. Platt.

"Eighth.

"I direct that all of the legacies herein provided for to be paid in cash shall be paid by my executors at their option and whenever it may seem to the best interests of my said estate; but I direct that the legacies herein provided for to be paid to my niece, Mary Anna Platt, and my wife's niece, Martha Elizabeth Frazier, when they shall have arrived at their majority, shall be paid with the legal rate of interest thereon from the date of the probate of my will; the purpose of this being to require my executors to invest for said minors said legacies in some investment which will pay them not less than the lawful rate of interest.

"Ninth.

"I nominate and appoint my beloved wife, Ida Frazier Platt, and my brother, M. R. Platt, both of Kansas City, Missouri, independent executors of this my last will, and I direct that no bond or other security be

required of them for the performance of their duty as such ·executors; and I direct that no further action be had in the probate court than the filing, proving and recording of my will, and the return of an inventory, appraisement and list of claims.

"JOHN H. PLATT.

"The foregoing will of John H. Platt was signed by him in our presence and we, at his request, sign the same as attesting witnesses, in his presence and in the presence of each other.

"MRS. CHAS. C. BEATY.

"MAURY KEMP."

At the January term, 1919, of the Jackson County Circuit Court, the cause having been called for trial in the assignment division, the appellant filed his application for a continuance, which was overruled by the court, and appellant duly excepted, and in due time filed his bill of exceptions to said ruling. The application was duly verified by appellant, and is as follows:

"Now comes the above named plaintiff, Ernest C. Platt, by his attorneys, and moves the court to continue this cause to the next regular term of this court, for the reasons stated in the following affidavit: Ernest C. Platt, the above named plaintiff being duly sworn says:

"1.   That he is the plaintiff in this cause and that he is not prepared for, and cannot safely go to trial at this term of this court, on account of the absence of a material witness; that the material issue in this cause is whether the John H. Platt named in the petition, as deceased, had, at the time it was executed, sufficient mental capacity to enable him to make, as his will, the instrument purporting to be such, referred to in the petition herein, and the evidence of the witness, on account of whose absence, this continuance is sought, relates to the mental condition of said John H. Platt before, at the time of and after he signed said instrument and the causes of said mental condition.

"2.   That the testimony of said absent witness is material in this cause; that the name of said witness is

Guy Williams, and his residence, so affiant was informed, was in the State. of Texas, and after much inquiry from parties who were supposed to have information concerning his whereabouts, affiant learned in the latter part of January, 1919, that said Williams, who had formerly lived in Dallas and Fort Worth, Texas, had gone to the 'Panhandle' of Texas, and is there now, but affiant has not yet been able to ascertain his exact location so as to get his deposition or procure his attendance and testimony.

"3.    The particular facts affiant believes said Guy Williams will prove are: That, from December, 1913, until March, 1914, he was in El Paso, Texas, for business reasons; that he became acquainted with the John H. Platt whose mental capacity to make a will is in question in this suit, in February, 1914, and saw him nearly every day in that month, including the time said Platt was confined to his room; that said Platt had a fit of some kind a day or two before he signed the instrument claimed to be his last will, during which he fell on his bed and became speechless; that at the time he had the fit said Platt and R. L. Evans, James F. Smith and affiant were occupying adjoining rooms, and on the night that the attack of epilepsy occurred, affiant and said Evans had accompanied said Platt to Juarez, Mexico, and after returning, on account of said Platt's mental condition, remained in the room with him, and after he was taken with the fit, said Evans called Dr. Huffaker; that from that time on said Platt was frequently in a mental stupor, and did not appear at times to know his friends; that he was nervous, his mind was cloudy, seemed unable to sleep at night, would frequently remain in bed until noon, and smoked cigarettes constantly; that Mr. Platt's condition, both of mind and body, was such that his intimate friends, including said James F. Smith and Mr. R. L. Evans, who were there at the time, considered it their duty to look after him, and be with him most of the time when they could, when he was not in bed; that his mental condition was

clearly apparent to those who were with him constantly; that he was apparently not capable of transacting any business of importance; that when he first met said John H. Platt in El Paso, said Platt was stopping at the McCoy Hotel, but afterwards moved to the Paso Del Norte Hotel; that said Smith is dead.

"4.   That affiant knows of no other person whose evidence or attendance he could have procured for this term of this court, by whom he can prove or so fully prove the same facts he expects to prove by said Guy Williams.

"5.   That said Guy Williams is not absent by the connivance, consent or procurement of this affiant and applicant, and this application for a continuance is not made for vexation or delay, but in good faith for the purpose of obtaining a fair and impartial trial in this cause; that this affiant has good reason to believe, and does believe that he will be able to procure the attendance and testimony of said witness at some time during the next regular term of this court."

The cause was thereupon assigned to the third division of said Jackson County Circuit Court, where the trial, begun on March 7th, during the same term, and continued by agreement into the March term, resulted in a verdict and judgment establishing the will, from which, after a motion for a new trial was overruled, this appeal was duly taken.

Although the bill of exceptions filed by the contestant contained the evidence given on the trial, the abstract of the record filed by the appellant only states it as follows:

"The defendant Ida Frazier Platt, proponent of the instrument purporting to be the last will of John H. Platt, introduced evidence tending to prove that said Platt had sufficient mental capacity to make a will at the time he executed said instrument, and the plaintiff, Ernest C. Platt, introduced evidence tending to prove that said John H. Platt did not have sufficient mental capacity to make a will, at the time said instrument was executed."

The defendants have, under our rule, presented the entire evidence contained in the bill of exceptions in narrative form.

The appellant's motion for a new trial presents the following grounds only:

"1.   Because the court erred in admitting irrelevant and immaterial evidence over the objection of the plaintiff.

"2.   Because the court erred in excluding relevant and material evidence offered by the plaintiff, to which plaintiff duly objected at the time.

"3.   Because the court erred in refusing to give instructions numbered 7 and 11 asked by plaintiff.

"4.   Because the court erred in giving erroneous instructions for defendants over the objection of plaintiff, which instructions are designated as a, b, c and d."

Numerous instructions were asked by the contestant and given or refused by the court. Among those refused were numbers 7 and 11, mentioned in the motion for a new trial, which read as follows:

"7.   The court instructs the jury that it is a matter of common knowledge that epilepsy, whether it be what is known as *grand mal* or *petit mal,* is a mental disease, and is in the arteries or blood vessels of the brain, and the questions to be determined in this case are whether the mind of John H. Platt was so affected by this disease or by Bright's disease, if you believe from the testimony that he had both or either, as to render him incapable mentally of making a will.

"11.   The court instructs the jury that if they should find that the instrument offered as the will of John H. Platt is not his will, his widow, there being no children, would be entitled to one-half of his estate in Missouri, and his estate in Kansas would not be affected by their decision."

The court thereupon, over the objections of contestant, gave the following instructions asked by the proponent of the will, to which contestant duly excepted:

"A. The court instructs the jury that the kind of mental unsoundness which renders a man incompetent to make a will does not mean mere imperfection of memory caused by sickness, forgetfulness of the names of persons or temporary forgetfulness of events or business transactions; or mere lessening of the ordinary powers of the mind or occasional imperfections of statement or wandering of the mind, or epileptic seizures or Bright's disease or other diseases or nervousness, or even a failure to. be able to transact ordinary business at times or habitually. A man may give all these manifestations or suffer from any of these afflictions, or all of them, or even be temporarily insane or suffer from delusions; yet, he possesses capacity to make a will and dispose of his property by will if at the very time he makes his will he understands that he is making a will and is able to remember the natural objects of his bounty and the manner in which he desires to dispose of his property and generally understands the nature and character of his estate.

"B. The court instructs the jury that the issue in this case is whether or not the document produced and read in evidence as the last will and testament of John H. Platt, deceased, is the will and testament of said John H. Platt. Under the law of this State every man of the age of twenty-one years or more may dispose of all of his estate by will (saving to the widow her dower) in such manner as he may see fit and proper, provided he is, at the time he makes the will, of sound mind, and provided the will is in writing, or typewriting (which is the same thing), and is signed by him and attested by two or more competent witnesses subscribing their names thereto in his presence. If, therefore, the jury believe from the evidence that the writing produced and read in evidence was formally executed by John H. Platt according to the above requirements of the law and that two of the subscribing witnesses thereto have testified to the sanity of John H. Platt, deceased, and that he was of proper age to make a will, then the court instructs you to find in

favor of the will unless you further find from the evidence in the cause that said John H. Platt at the time of the execution of said will had not sufficient mental capacity, as defined to you by the court in other instructions.

"C. The court instructs the jury that the only question for your consideration in this cause is whether or not John H. Platt was of sound mind at the time he executed the paper offered in evidence, purporting to be his last will and testament. You are to consider this question and this only. The state of the deceased Platt's mind before and after the execution of the will is material only as it tends to throw light on the condition of his mind at the time of the execution of said paper. It is important only as it may aid you in making inquiry of his mental condition at that time. If you find that he had mental capacity to make the will, as such capacity is defined in other instructions, then it is your duty to uphold the will regardless of other facts and circumstances in the case.

"D. The court instructs the jury that a man owning property has a right to dispose of it by will as he sees fit. The purpose and policy of the law is to permit those who possess property to dispose of it and to dispose of it unequally, if they so desire. The jury are therefore instructed that the decedent, John H. Platt, if of sufficient mental capacity, as defined in these instructions, had the right to make the will in question, and dispose of his property, as he did dispose of it, and that the jury have no right to set aside the will on the sole ground that there was an unequal disposition of the property under the will, if you believe there was, and even though it was not such a will as the jury, themselves, might have made.

Further reference will be made to the record, including the testimony presented by respondent in his additional abstract, if necessary.

The following errors are assigned in contestant's brief:

"1st.   The court erred in refusing appellant's application for a continuance, which was made part of the record proper, by a term bill of exceptions, filed in the assignment division of said court.

"2d.   The court erred in refusing Instruction No. 7 requested by appellant.

"3d.   The court erred in giving instructions designated A, B, C and D, requested by respondents, and in the giving of each and every one of them.

"4th.   The court erred in overruling appellant's motion for a new trial."

I.   This is a suit to contest the will of John H. Platt who died December 21, 1914, in Johnson County, Kansas, where he resided, leaving a widow, Ida Frazier Platt, surviving him, but no children or other descendants.   The plaintiff-contestant is Ernest C. Platt, a brother
<span style="margin-left:2em">Dismissal of Appeal.</span> of the deceased.   The defendants are the widow, who is the executrix named in the will and principal beneficiary, his three remaining brothers, Beverly C. Platt, Mortimer R. Platt and Virgil N. Platt, three nephews and one niece, a niece of his wife and the Methodist Episcopal Church, South, of which his deceased mother was a member.   His brothers and nephews receive, by the terms of the will, legacies of $1,000 each, while the widow's niece and the mother's church receive $500 each.

The nephews and niece of the deceased answer through one of the brothers as guardian, admitting the allegations of the petition.   The widow's niece and the church array themselves with the widow.

It will be seen from the foregoing that the real contest is between the four brothers of the deceased on one side, and the widow, her minor niece and the church on the other; the nephews and niece of the deceased being arrayed by their father against their own legacies, although the record shows that some of these legacies had been paid before the institution of the suit.   The sole ground of the contest is the testamentary incapacity

of the deceased. The abstract of the record filed in this court states the evidence as follows:

"The defendant Ida Frazier Platt, proponent of the instrument purporting to be the last will of John H. Platt, introduced evidence tending to prove that said Platt had sufficient mental capacity to make a will at the time he executed said instrument, and the plaintiff, Ernest C. Platt, introduced evidence tending to prove that said John H. Platt did not have sufficient mental capacity to make a will, at the time said instrument was executed."

It then sets out the instructions, including an instruction asked by the proponent directing the jury to declare the paper propounded to be the last will and testament of John H. Platt, and the refusal of the trial court to give it to the jury, and the exception of the proponent to such ruling, and also numerous other instructions offered by both parties, with the rulings of the court thereon, and his own exceptions to the refusal of the court to give the several instructions asked by him.

The proponent now asks the court to dismiss the appeal for failure of the plaintiff to comply with Rule 6 of this court in that respect, although she filed in due time under our rule an additional abstract purporting to set forth the entire evidence.

The respondent says that her request that the consideration of the case be taken from the jury by a direct verdict in her favor was before the trial court at the first opportunity presented, and was decided by the court against her; that she kept the question in the record by her exception; that it covered the entire case, which could not be heard in this court upon any question involving the submission of the case to the consideration of the jury without determining whether or not the plaintiff was entitled upon the evidence to such submission, and that the plaintiff, not having presented his appeal to this court in such manner that its disposition was possible, it should be dismissed.

Had the respondent stood upon her right this question would require serious consideration, especially in

view of our Rule 13. Having, however, preferred to take advantage of her right under Rule 11 to prepare, serve and file an additional abstract supplying the very omission complained of, we think she has waived the harsher remedy that she might otherwise be entitled to. We will therefore consider the evidence so supplied in connection with the questions presented by this appeal so far as may be necessary to their determination.

II. The first of these questions relates to an exception taken to the refusal of the court to grant a continuance of the case on the application of the plaintiff based on the absence from the court of a material witness in his behalf. No reference is made to this alleged error in the motion for a new trial filed at the March term after the return of the verdict and entry of judgment thereon. The trial began by agreement of parties, during the last days of the January term, 1919, and extended into the succeeding March term without interruption. The motion was filed when the cause was called in assignment division, and was, under a rule of the court, heard and overruled in that division before the assignment for trial, and a bill of exceptions was filed in due time in the division which heard and disposed of the applicatoin and enforced the trial.

Continuance.

The appellant makes the point that under these circumstances it was not necessary to raise the question in a motion for a new trial in the division which tried the case, but that he may come here for that purpose. His thought seems to be that because the order complained of was made in another division of the same court which tried the case, it became a part of the record proper instead of remaining a matter of exception, and its propriety may therefore be questioned in the appellate court without the formality of an application to the trial court. We frankly confess our inability to understand this distinction and rule the point against the appellant.

III.  The next point upon which a reversal is asked is the refusal of the court to give plaintiff's instruction Epilepsy. numbered 7, which informs the jury "that it is a matter of common knowledge that epilepsy, whether it be what is known as *grand mal* or *petit mal,* is a mental disease, and is in the arteries or blood vessels of the brain, and the questions to be determined in this case are whether the mind of John H. Platt was so affected by this disease or by Bright's disease, if you believe from the testimony that he had both or either, as to render him incapable mentally of making a will."

The evidence shows that in 1893 the deceased, then a minor, was taken by his father and Dr. Block, his attending physician, to St. Vincent's Hospital in St. Louis, an institution for the treatment of mental and nervous diseases, suffering from a disorder there diagnosed as "idiopathic epilepsy," induced by a recent sun stroke, from which he recovered and was discharged in about four months.  During his manhood he was attacked by Bright's disease of the kidneys which, according to the usual course of that malady, caused his death.  This disease was characterized by intermittent paroxysms of great pain accompanied at times by apparent mental disturbance, and this instruction evidently had in view a connection between this fatal disease and the epileptic symptoms or conditions manifested in the disorder for which he was treated at St. Vincent's Hospital.

The statement in the instruction that epilepsy is a mental disease and is in the arteries and blood vessels of the brain was evidently intended to impress the jury that the theory that epilepsy in all its forms was a mental disease, having its seat in the brain structure and was, therefore, insanity, and whatever the person so afflicted should think or determine was therefore the product of a diseased mentality.  In other words, it assumed that the man was mentally unsound as a foundation upon which to consider the case.

There being no evidence in the record to this effect, the instruction proposes to dispense with evidence by

assuming the truth of the proposition as a matter of common knowledge.

We doubt whether there is one person in each one hundred of the people of the country who understands the meaning of the French words *"grand mal"* and *"petit mal"* as used in connection with epilepsy, and that still fewer have heard that it is characterized by a lesion of the blood vessels of the brain. That this disease is not insanity was truly said by this court in Turner v. Anderson, 260 Mo. 23, and so eminent an authority as Clevenger in his book on insanity (p. 1045) says: "Two-thirds of my *petit mal* cases do not suffer intellectual impairment." Nor is there, in our opinion, any evidence that there was a recurrence of epileptic symptoms in this case after the prompt recovery of the patient reported by the hospital in which he was treated. The whole theory of the instruction as requested seems to have been that it might stand as a substitute for evidence connecting its subsequent ailment with this epileptic attack. It was very properly refused.

IV. Appellant complains of the action of the court in refusing his instruction numbered eleven, which is as follows:

"11. The court instructs the jury that if they should find that the instrument offered as the will of John H. Platt is not his will, his widow, there being no **Widow's** children, would be entitled to one-half of his **Interest** **in Estate.** estate in Missouri, and his estate in Kansas would not be affected by their decision."

Although the plaintiff in his assignment of errors specifies the refusal of instruction numbered seven to which we referred in the last preceding paragraph, he makes no mention of the refusal of this instruction and therefore we do not think the question is before the court. If it is, there was no error in its refusal. It has nothing to do with the mental capacity of the testator to make the will in question and was, we presume, omitted from the assignment of errors for that reason.

V. It being admitted in the appellant's assignment of errors to which we have referred in a previous paragraph that the evidence of the proponents was sufficient to make a prima-facie case in favor of the testamentary capacity of the testator, the question is presented whether the appellant has presented any substantial evidence to the contrary. This involves the consideration of the nature of the will itself and the relation of the parties, both in that capacity and as witnesses to the subject of the issue.

Evidence of Incapacity.

There is no suggestion in the record that the will itself, with respect to its dispositions, is not the natural act of a perfectly normal man. He was married when about twenty or twenty-one years old, and the wife, whom we will designate as the proponent, was slightly younger. They lived together on a farm, obtaining their livelihood from the soil, until the death of his father, which occurred fifteen years afterward; he leaving considerable property, the most valuable part of which seems to have been real estate in Kansas City, and all of which descended in equal shares to his five sons. During the three years and more which succeeded the death of the father until the death of this testator some division was made, the testator having made conveyances to the appellant, and his brother Mortimer, by the way of partition, receiving other interests from them in return. The testator handled his property successfully, and up to the time of his death three years later none of his brothers suggested any lack of mental capacity on his part, or that he needed protection in the matter of his dealings with themselves and others. On the contrary, they dealt at arm's length, as appears from the testimony of both the contestant and his brother Mortimer, who were witnesses in their own behalf at the trial. Mortimer, who testified that the testator was, for many years before his death, incompetent to transact ordinary business or to make a will, received his legacy of $1000, which so far as the evidence shows, he retained at the time of the trial. His four children, who were also

legatees to the extent of $1000 each, are represented by him as their guardian. Answering for them, he admitted the testamentary incapacity of the testator, thereby surrendering their interests for the benefit of himself and his brothers. Under these circumstances his testimony should be considered with care, and wherever it comes in conflict with acts done by him in his own interest it should, so far as possible, receive an interpretation consistent with honesty and fair dealing. We are therefore at perfect liberty to assume, in the absence of anything in his testimony directly exhibiting a different intention, that he does not intend to say that during his business transactions with his brother the latter was mentally incompetent.

Doctor Block, who placed the testator in St. Vincent's Hospital, testified for appellant that when he was discharged four months afterward, he was cured of that disease, and there is absolutely no evidence to the contrary. The mention of epilepsy in connection with the execution of this will shows no purpose other than the malign influence the terrible word might have upon the jury. This was evidently in mind in the preparation of the appellant's instruction number seven, to which we have referred in the third paragraph, in which it was not sought to submit any question relating to epilepsy to the jury, but simply to conjure by the magic of the name. The only evidence of any mental disturbance from the time of his discharge from St. Vincent's to the day of his death referred solely to intermittent paroxysms incident to Bright's disease of the kidneys, from which he suffered for years preceding his death. These are called "eleptiform" in the testimony, and are the result of uraemic poisoning incident to the fatal disease. While the testimony shows that signs of terrible and exhaustive suffering accompanied these paroxysms, it is all to the effect that during the intervals he transacted his business and lived his social life among his neighbors with more than ordinary intelligence and success. We have searched it with care and have failed to find in it

the relation of any incident that indicates mental deterioration or lack of careful consideration of his business acts and operations. It is all to the effect that he had his business well in hand and managed it with care, skill and success. No witness has related any foolish or absurd thing that he ever did.

It needs no argument to show that proof that one's mind is occasionally weakened by suffering or disease, is not sufficient to avoid an act done while that condition does not exist. As we said in Spencer v. Spencer, 221 S. W. 58: "Such disability must be shown to have existed at the very time of executing the will. Testimony of the condition of the testator at other times is only admissible in so far as it tends to prove his capacity or incapacity in that act." We there cited many authorities readily accessible to any who desire such confirmation of so plain a proposition. The evidence is, therefore, insufficient in this respect to disturb the verdict. The testimony of Dr. Huffaker, one of the plaintiff's witnesses who was treating both the testator and his sick wife in El Paso at the time of the execution of the will, strongly confirms this statement. He states the symptoms of the testator incident to Bright's disease from which he was suffering, became so severe that he thought it his duty to and did advise him to make his will if he desired to dispose of his property in that manner. The doctor also gave him the name of Mr. Kemp, a member of a leading law firm in that city whose professional ability is not questioned, as a proper person to consult about it, and took him to their office and introduced him with the information that he desired to make a will to provide for his wife, who was then sick at a hospital in that city. The subject of the will was then discussed between the testator and the lawyer, who undertook the work of rendering his professional assistance in the matter of the preparation and execution of the will. It took a week to prepare the instrument, during which there were a number of interviews and discussions of the various questions presented and altera-

tions in the experimental drafts, and when it was finally completed, both the lawyer and his office stenographer, who took dictation from which she prepared the various drafts made from time to time in the progress of the work, signed it as witnesses. The date was evidently omitted by oversight. Mr. Kemp testified as follows: "Mr. Platt impressed me as a man who was very conscious of what he wanted to do, and had himself thoroughly in hand, on that point. He impressed me as a man who knew that he was sick—said he knew he had Bright's disease—and who wanted to shape up his affiairs so that they would be the way he wanted them to be. He discussed—he spoke of the fact that Mrs. Platt was there at the Hospital undergoing an operation; I think she was sitting up at the time, or better. He wanted to make provision for her."

Mrs. Beaty, the stenographer, testified: "Mr. Platt gave his directions to Mr. Kemp about the will very carefully, and seemed to know each one he wanted to leave something to and how he wanted the will made—never hesitated—and it took only a short while to take directions from him. . . . He was very intelligent, and there was nothing wrong with his mentality."

There is no evidence in the record tending to contradict any of these statements. During this time his wife was sick at the hospital in El Paso, suffering from a capital surgical operation, and there is no suggestion that at this or any other time she exercised, or attempted to exercise, any influence over her husband with reference to the execution of the will other than that inherent in her relation as wife and the faithful and loving performance of her duties as such. Under such circumstances the law will imply no mental weakness from his act.

VI. In Spencer v. Spencer, supra, quoting from Hahn v. Hammerstein, 272 Mo. 248, l. c. 259, we defined testamentary capacity as follows: "First, the testator must understand the ordinary affiairs of his life; second,

Testamentary
Capacity:
Comprehension
of Property.

he must know both the nature and extent of his property and the persons who are the natural objects of his bounty; third, he must know that he is disposing of his property in the manner and to the persons mentioned in his will." While this rule is stated by this court in various forms in many cases the general principle, in its application to the facts of each particular case, runs through them all. The only suggestion that the mentality of the testator at the time he executed this will did not come up to that test, lies in the provision of paragraph six of the will that "my said wife shall not dispose of *my property* situated in Kansas City, Missouri, on the corner of Sixteenth and Genessee Streets and leased to White and Dreyfoss, for a period of ten years after my death; and I likewise direct that my wife shall not dispose of my real property situated in Kansas City, Missouri, now under lease to the Chesapeake Bay Fish and Oyster Company, until the expiration of the lease now held by the lessee thereof." The argument seems to be that this clause shows in some way that the testator did not comprehend the extent of his real property devised, because his interest in these two tracts was an undivided one and did not include the entire title. The words devising that interest were amply sufficient without such mention, and is no evidence of such failure of memory. It is difficult to grasp a point so ethereal, but it requires that we say that the offending description does not refer to the land in the particular locations pointed out, but only to his property, whatever it might be, in that land. So far as the limitation upon its title is concerned, it is sufficient to say that it was written or dictated by competent counsel who was not impressed by the insanity which might lurk in its terms.

VII.  It has been wisely held by this court that "a man may be capable of making a will, and yet incapable of making a contract, or managing his estate." [Brinkman v. Rueggesick, 71 Mo. l. c. 556.]  The reasons

which support this rule are so clearly applicable to the facts of this case that a brief statement showing the analogy will not be out of place. One who should, like this testator, having no property of his own, at an age which marks the dividing line between boyhood and manhood, marry a penniless girl still younger then himself, would naturally be ambitious not only to be able to support her in comfort, but also to accumulate something to leave her should he die before her, and her love, confidence and assistance during twenty years of married life would increase his anxiety for her substantial well-being and safety. As he liquidates his speculative ventures, absorbing his losses and adding his gains to their possessions, it is natural that he should wait for the time when this process has arrived at a stage in which he could intelligently make a will which would provide liberally for her without adding to her burdens. He knows her weakness as well as her strength, and desires, as did this man, to provide a safe income of which she will be powerless to strip herself by gift. Making a will is usually postponed to await the issue of the struggle.

Finally, perhaps at midnight while lying upon a bed of pain, he hears the White Horse impatiently champ his bit and stamp the road before his gate and he knows that his affairs have ripened and must be gathered now. The law stands by his side sympathetic in his dilemma, with a few simple rules for the accomplishment of his purpose. He makes the will so long postponed to a more auspicious time, girds himself, and rides forth confidently into the unknown. The anxious consideration of years has culminated in its act. Is it for us to say that it shall serve no other purpose than to soothe him into false security at his departure? It infringes no man's right. If all the world had been present no one would have had an interest over which he could haggle or contend. The transaction was between the testator and his own soul. As said in Redfield on Wills, and quoted with approval in the Brinkman case, supra, it

was sufficient that the testator understood what he was about and knew to whom he was giving his property.

As we have already said there is no evidence in this case to the contrary of this proposition in whatever form we may state it. The judgment of the circuit court is therefore affirmed. *Ragland, C.,* concurs; *Small, C.,* not sitting.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur; *Graves, J.,* in the result.