DOHERTY *et al.* v. GILMORE *et al.*, *Appellants.*

In Banc, December 15, 1896.

1. **Will:** UNDUE INFLUENCE: BURDEN OF PROOF. While undue influence need not be shown by direct proof, the burden is on the party alleging it to establish facts from which it may be reasonably inferred.

2. ———: ———. Evidence reviewed and *held* insufficient to show that a will was executed under undue influence.

3. ———: ———: EVIDENCE. Declarations of a testator as to the persons who influenced him to make a will will not be received to support a charge of undue influence.

Doherty v. Gilmore.

*Appeal from DeKalb Circuit Court.*—HON. W. S. HERNDON, Judge.

REVERSED AND REMANDED.

*Harwood & Hubbell* for appellants.

(1) The court committed reversible errors in giving to the jury instructions numbered 1, 5, 6, and 8 on the part of the plaintiffs, because there was no evidence of Joseph D. Gilmore having exercised undue influence over the mind of the testator. *McFadin v. Catron*, 120 Mo. 252; *Maddox v. Maddox*, 114 Mo. 35; *Norton v. Paxton*, 110 Mo. 456; *Thompson v. Ish*, 99 Mo. 160; *Jackson v. Hardin*, 83 Mo. 175; *Brinkman v. Rueggesick*, 71 Mo. 553; *Spoonmore v. Cables*, 66 Mo. 579; *Alexander v. Harrison*, 38 Mo. 258. (2) For the same reason the trial court erred in refusing the first instruction prayed by defendants. *Mays v. Mays*, 114 Mo. 536. (3) The court committed reversible error in giving instruction numbered 3 on the part of the plaintiffs, because it told the jury, in effect, that in order to constitute a valid will the testator must have been able to make a reasonable disposition of his property. *Couch v. Gentry*, 113 Mo. 248; *Benoist v. Murrin*, 58 Mo. 307.

*Casteel & Haynes* for respondents.

(1) There was ample evidence to submit the case to the jury on the question of undue influence. *McClintock v. Curd*, 32 Mo. 411; *Harvey v. Sullens*, 46 Mo. 147; *Myers v. Hauger*, 98 Mo. 433; *Thompson v. Ish*, 99 Mo. 160; *McFadin v. Catron*, 120 Mo. 252; 1 Jarman on Wills, 132; 1 Redf. on Wills, 516; 1 Redf. on Wills, 537. (2) If there was any evidence tending to prove undue influence, or from which the jury might reason-

ably infer the same, the case was properly submitted to the jury. *Wilson v. Board*, 63 Mo. 137; *Cook v. Railroad*, 63 Mo. 397; *Buesching v. Gaslight*, 73 Mo. 219; *Kelly v. Railroad*, 70 Mo. 604; *Groll v. Tower*, 85 Mo. 249; *Noeninger v. Vogt*, 88 Mo. 589; *Gardner v. Crenshaw*, 122 Mo. 79. (3) The instructions as a series should be taken together, and if as a whole they are correct and consistent, their meaning is to be collected from the whole context, and not from detached instructions or phrases in them, and if, when so treated, their meaning is obvious, the legal principles enunciated correct and applicable to the case, they are safe guides for a jury, even though subject to verbal criticism. *State v. Matthews*, 98 Mo. 125; *Reilly v. Railroad*, 94 Mo. 600; *Harrington v. Sedalia*, 98 Mo. 583; *Karl v. Railroad*, 55 Mo. 476; *Mayor v. Burns*, 114 Mo. 426.

### DIVISION ONE.

ROBINSON, J.—This is a suit to set aside the will of William T. Doherty, founded upon a petition in two counts; the first alleging want of testamentary capacity, the second alleging undue influence exercised over the mind of the testator by one Joseph D. Gilmore, a grandnephew, who, together with a brother and sister, was the recipient of the greater portion of the testator's estate.

The case was tried by a jury who under instructions from the court found in favor of plaintiff, which results in the setting aside of the will.

Several errors are assigned by appellants as grounds for reversing the judgment rendered therein, but in the disposition which we will make of this appeal only one will be noticed.

At the close of the testimony, defendants asked the court to instruct the jury "that there was no evi-

dence of undue influence as in law would invalidate the writing propounded as the last will of the testator Doherty as alleged in the second count of plaintiffs' petition."

Defendants' instruction was refused and the following instructions on that issue, in behalf of plaintiffs, over the objections of defendants, as if to emphasize the error complained of, were then given by the trial court:

"*First.* The court instructs the jury that you are to pass upon two questions in this case; *First*, whether or not Wm. T. Doherty, deceased, at the time of the execution of the paper writing offered in evidence as his will, possessed sufficient testamentary capacity to make a will; and, *second*, whether the paper writing, offered in evidence as the will of· Wm. T. Doherty, was the result of undue influence used upon the said William T. Doherty in procuring the execution of said paper writing. If you find from the evidence, either that Wm. T. Doherty, at the time of the execution of said paper writing, did not have sufficient testamentary capacity to make a will, or if said paper writing was the result of undue influence, then you will find your verdict against the will and in favor of the plaintiffs, although you may believe from the evidence that he signed it as such and the witnesses attested it as such."

"*Fifth.* The court instructs the jury that if you find from the evidence that the testator Wm. T. Doherty was an old man of weak, disordered intellect, and that his mind was so impaired and weakened from any cause as to subject him to the dominion, control, or influence of Joseph D. Gilmore, and the jury find from the evidence that he exercised such influence and control over the mind of said Wm. T. Doherty in his disposition of his property, so as to destroy his liberty

and free will and cause it to be made to suit his wishes, and not the wishes of the testator, this is such an influence as will invalidate the will, and your verdict should be against the will."

"*Sixth.* If the jury find from the evidence that the mind of the deceased Wm. T. Doherty, either from sickness, disease, age, bodily and mental decay, or overweaning confidence, was subject to the dominion and control of his grandnephew Joseph D. Gilmore, and that he exercised such power and influence over his mind and will in the disposition of his property by said will, as to destroy his liberty and free agency to cause such disposition of his property to be made as to suit the purposes and wishes of defendant Joseph D. Gilmore and not his own, then said will in law is not the will of said Wm. T. Doherty, and the jury will find the issue submitted to them for the plaintiffs and against the will."

"*Eighth.* The court instructs the jury that any statements the said Wm. T. Doherty may have made to his neighbors or others about his domestic affairs will not be considered by you for the purpose of determining their truth, but only for the purpose of determining his mental condition; and the court instructs the jury, that in determining whether undue influence was used to procure the execution of the paper writing offered as the will of Wm. T. Doherty, they will take into consideration his mental and physical condition at the time of the execution of it, and any statements he may have made, the will itself, and the provisions therein. The court further instructs the jury that direct evidence is not required to establish either mental unsoundness or undue influence, and that you may find both, or either, from the facts and circumstances in the case, including the will itself and its provisions,

if in your opinion all the facts and circumstances taken together justify such finding."

I have examined the facts of the case with care, and have been unable to find a word or syllable of legal evidence upon which a verdict of undue influence could be predicated, and think that reversible error was committed by the trial court, when it refused to withdraw that issue from the consideration of the jury as requested by defendants, and for the giving of instructions 1, 5, 6, and 8 above set out in behalf of plaintiff.

While the exercise of undue influence, like fraud, may be established when facts have been proved from which it results, as a reasonable inference, the rule is that the burden of establishing the one, as the other, is always upon the party alleging it, and is in nowise impaired by the right to infer facts as existing from those shown to exist. Here no fact or facts were shown to exist, from which a deduction of fraud or undue influence would result as a reasonable inference.

Undue influence can not be presumed against defendant Joseph D. Gilmore from the mere coincidence of opportunity to influence his uncle by being a member of his household at the time and for years before the making of the will, that he went to town for the attorney who drafted the will at the request of his uncle, and that he and his brother and sister were the principal beneficiaries under its provisions; nor will the grouping together of all the facts and circumstances as detailed by any and all the witnesses in this case, tend to establish or authorize, as a legal inference, the existence of undue influence on the part of Joseph D. Gilmore, upon the mind of his uncle, or that in making or executing the will the testator was not acting free from the control of any and every one.

The fact that the testator was old and infirm, and that in the making of his will he ignored to a great

extent a niece who had for the past several years lived at his house and been his constant attendant, are not facts of themselves, or in connection with any other facts shown, authorizing the submission of the question of undue influence to a jury, who (as the experience of all judges must inform them) are too apt to consider that an influence, undue from some source, prompts all wills not made in accordance with the dictates of natural justice and fairness, to all having equal claims, by kinship, blood, or service, upon the bounty of the testator.

Just what may be legitimately brought to bear upon the mind of a testator to influence the making of a will in a particular way, and at what precise point such influences become what the law denominates undue such as to avoid the testamentary act, is oftentimes not easy to determine, but that something further than the mere making of a will that is apparently unfair or unjust, according to the judgment of the court, wherein its validity or soundness is brought in question, must be shown and proved before the question of undue influence can be submitted, is a question about which there is no doubt or uncertainty.

Although the testator in this case made a will that might have excited the suspicion of the court and jury who tried the case, on account of the unequal distribution of the testator's estate, to his grandniece and sons to the almost exclusion of a most faithful and dutiful niece who had equal claim upon his bounty, nevertheless affirmative proof of such undue influence is required to be made either by direct facts shown, or of facts and circumstances, from which undue influence results, as a reasonable and fair inference and not as a mere conjecture.

But, say respondents, the testimony of Mrs. McCamey, one of the plaintiffs, was, that the testator

said to her just a short time after the making of the will "the clique (referring to the Gilmore children) made me mad at you and made me do what I did not intend to do," and again that Mr. Clark, the cashier of the bank at Stewartsville, where testator had kept deposited his money, testified that Joseph D. Gilmore, one of the grandnephews of the testator, who got by the will, together with his younger brother and sister, the greater portion of the testator's estate, had drawn out on checks between March 20, 1891, and August 17, of that year, the entire sum of money the testator had in bank, $1,200 of which was drawn out just six days before the will was made, and the small balance left of $4.80 three days after the making of the will.

The declaration of the testator as to why, or who caused him to make the will, as detailed by Mrs. McCamey, so far as it is relied upon as furnishing evidence of the facts stated, is but hearsay and could not be received as such, but would be admissible only to show the state of his mind on the issue as raised in the first charge of plaintiff's petition where the condition of the testator's mind was the question involved. The testator's declaration as to who influenced or compelled him to make the will in question is absolutely useless evidence in support of the issue of undue influence, and as such can not be considered.

Neither could the mere statement of Mr. Clark, the cashier, to the effect that he had paid out to defendant Joseph D. Gilmore, on checks of his uncle, all money at that time belonging to him in his bank, unconnected with any of the facts showing for what purpose the defendant drew it, whether for himself or for his uncle, whether received by him as a gift or as a debt, or, whether after being drawn on his uncle's check it was not paid out on his uncle's account, or what of a thousand reasons may be suggested as to the

disposition of the money (one is left in the dark by the testimony) be said to be a fact proving or tending to prove by itself or in circumstances with any other fact shown, an undue influence exerted by Joseph D. Gilmore upon the mind of his uncle leading up to or inducing the making of the will in question.

This case seems to have been considered rather upon the theory that if the testator in making his will disposed of his property in a manner contrary to natural affection or duty, according to the general order of distribution, that of itself was ample to excite apprehension of undue influence, and to indicate overpersuasion or deception upon the part of some one, so that a mere insinuation or accusation made by the propounding of a question to a witness, without regard to the answer given to it, was taken as proof of its existence.

There is not one word of testimony that the defendant Joseph D. Gilmore induced the making of the will in controversy, by his uncle, or that its provisions were in any way dictated or suggested by him, to say nothing of the question of undue influence exerted by him upon the mind of his uncle causing it to be made. The instruction submitting the question of undue influence to the jury was clearly erroneous and could not be otherwise than hurtful, and for that reason the judgment of the trial court will be reversed and the cause remanded for a new trial. MACFARLANE, J., concurs; BRACE, C. J., and BARCLAY, J., dissent, and cause transferred to court *in banc*.

IN BANC.

PER CURIAM.—The foregoing opinion handed down in division number one is adopted as the opinion of the court *in banc*. GANTT, SHERWOOD, MACFARLANE,

and BURGESS, JJ., concurring with ROBINSON, J., therein. BRACE, C. J., and BARCLAY, J., dissenting. The judgment of the circuit court is therefore reversed and the cause remanded for new trial.