DEFOE *et al.* v. DEFOE *et al.*, *Appellants*.

Division One, June 8, 1898.

1. **Will**: UNDUE INFLUENCE: FAILURE OF EVIDENCE. In this case it is *held* that the trial court committed error in not giving a peremptory instruction, at the close of all the testimony, that there was no evidence of any undue influence exercised over the mind of the testator by defendants in the making of his will.

2. ——: ——: ——: SUBMISSION TO JURY. When the evidence as to undue influence is of such a character that no issue has been made, the jury have no right to defeat the will. The prejudice of the testator to saloons, gambling and option-dealing, his solicitude and anxiety for a son who had acquired habits of drunkenness and card playing, and his failure to give him as much property as he would have received had there been no will, do not afford any evidence of undue influence.

3. ——: ——: ——: INFLUENCE OF WIFE. A warning to a son-in-law by the testator's wife to be cautious about becoming surety for the payment of the note of a drunken stepson, made in the presence of the testator, and the fact that she spoke harshly of the immoral habits of such son, are not evidence that she unduly influenced her husband to so draw his will as to give her the most of his property.

*Appeal from Gasconade Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED (*with directions*).

*D. C. Taylor* and *John W. Booth* for appellants.

(1) The burden of proof to establish undue influence is on the party holding the affirmative of that issue. *Dougherty v. Gilmore*, 136 Mo. 414; *Berberet v. Berberet*, 131 Mo. 399; *McFadin v. Catron*, 120 Mo. 252; *Ib.* 138 Mo. 197; *Carl v. Gabel*, 120 Mo. 283; *Maddox v. Maddox*, 114 Mo. 35; *Jackson v. Hardin*, 83 Mo. 175; *Jones v. Roberts*, 37 Mo. App. 174. (2) It

is error to give instructions calling for a verdict on an hypothesis which there is no evidence to support. See cases cited to point one. In this case there was no evidence of undue influence. Hence the court erred in giving instructions requiring the jury to find against the will if they believed from the evidence that it was procured by undue influence. (3) In the contest of a will, declarations of the testator are received in evidence only as external manifestations of the mental condition of the testator and of the state of his affections, and not as evidence of the truth of facts stated. *Dougherty v. Gilmore*, 136 Mo. 414; *McFadin v. Catron*, 120 Mo. 252; *Ib.* 138 Mo. 197; *Rule v. Maupin*, 84 Mo. 587. (4) Undue influence to vitiate a will must result in a bequest in favor of a party exercising it. Jarman on Wills [2 Am. Ed.], ch. 3, par. 36. (5) There is no evidence of undue influence in the case; on the contrary, on all the evidence the will is the free will of the testator; and a reasonable result of his just perceptions of good morals, propriety and duty acting naturally upon his affections. *Jackson v. Hardin*, 83 Mo. 175; *Berberet v. Berberet*, 113 Mo. 399; *McFadin v. Catron*, 138 Mo. 197; *Cash v. Lust*, 44 S. W. Rep. 724.

*Z. J. Mitchell, F. W. Brooks* and *R. H. Stevens* for respondents.

(1) Undue influence may be inferred from facts and circumstances proven in the case, and it was not error in giving instruction 9 at the instance of plaintiffs. *Carl v. Gabel*, 120 Mo. 283; *Woodberry v. Woodberry*, 141 Mass. 329; *Myers v. Hauger*, 98 Mo. 437. (2) The court did not err in giving instruction relating to engendering and using the prejudices of Levi C. Defoe against drinking, getting drunk and

gambling. Even if it is true that William F. Defoe was a frequenter of saloons and a drunkard and gambler, the defendants ought not to have made these faults of their half brother a matter of discussion with their father, knowing it only caused him, being an invalid, to worry and become prejudiced against his son, but as a matter of fact it is not true that after the twenty-first of December, 1891, date of the second will of Levi C. Defoe, that William F. Defoe ever gambled or speculated in wheat, and it is not true that he was ever a frequenter of saloons or a drunkard in any sense of the word, and there is not one particle of testimony to show that those things are true, yet the testimony shows that this was a matter of frequent discussion between Mr. Defoe, his wife and his daughters and son-in-law. This being so and the will having been made by Mr. Defoe beyond doubt from his belief that William F. Defoe was a gambler and drunkard or frequenter of saloons and being made greatly in the interests of Mrs. Defoe and her children, the jury had a right to infer Mr. Defoe got his ideas and belief that Frank was drinking hard or a frequenter of saloons and a gambler from Mrs. Defoe and her codefendants in his frequent discussions with them about Frank and his "recklessness." (3) The question of will or no will is for the jury, and where the law of the case has been declared with substantial accuracy, the verdict will not be disturbed by the appellate court. *Elliott v. Welby*, 13 Mo. App. 19; *Mullers v. St. Louis Hospital Ass'n*, 73 Mo. 242.

ROBINSON, J.—This is a proceeding under the statute, instituted by the respondent, William Frank Defoe, and Walter and Singleton Buford, minors, by their next friend John B. Buford, to contest and set aside the will of Levi C. Defoe, the father of William Frank

Defoe and the grandfather of the two minor plaintiffs. The petition as filed alleged two grounds for contest, *first*, mental incapacity of the testator, and, *second*, undue influence exercised over his mind by the defendant while in that condition, to procure the making and signing of said instrument. Appellants by their answer allege the instrument to be the will of said Levi C. Defoe, executed with sound and disposing mind and memory, and deny the allegations of undue influence. On the trial appellant made due proof of the execution of the will and of the testamentary capacity of the deceased Levi C. Defoe, and then read the will and rested. Respondents offered their testimony and rested, and in open court formally elected to and did abandon their claim of want of testamentary capacity of the testator, and elected to stand on the issue of undue influence.

Why the trial court did not force respondents to an abandonment of both issues at the close of all the testimony by a peremptory instruction, we are at a loss to understand, and are still more perplexed in the endeavor to conjecture upon what theory the jury could have predicated their finding.

We are not unmindful, in saying that this case should have been disposed of by the trial court, of the special right and province of the jury to consider, determine and judge of the facts, and of the importance in preserving that right from judicial intrenchment; but when the testimony is of such a character that no issue, on the question of the exercise of undue influence on the part of the defendants or any of them over the mind of the testator, is or could legitimately be said to have been made, the jury have no right under the pretense of the consideration of the facts of the case, to defeat a will that has been made by one confessedly competent to dispose of his property, merely because that disposition was not after the notion or fancy of the

jury, or because, perchance, the jury did not approve of or indorse some of the social prejudice of the testator which with him were shown to be quite strong and aggressive.

From the testimony it appears that the only member of the Defoe family to whom the testator ever spoke on the subject of a will was the plaintiff in this action, Frank Defoe, and to him only once, and then regarding a former will that had been made, and that testimony comes from Frank Defoe, and when considered in the light of all the surrounding facts, confirms rather than otherwise, the present will, if it could be said to need confirmation.    Eliminate from this case the great amount of testimony showing the strong and bitter prejudice the testator had against saloons, saloon-frequenting, drinking and gambling in all its forms, and the defense that the son Frank undertook to make against the charges of his father that he was too frequently indulging those habits, the work of analyzing the remaining portion would be easy.    All the testimony shows that Frank Defoe (who alone of all the heirs claims to have been aggrieved by the will), after leaving his father's home and getting married became addicted to saloon-frequenting, drinking and card-playing, and also gambling in options to a considerable extent at one time, and that when these habits of the son came to the knowledge of the testator, it gave him great anxiety and distress, and that he made strenuous efforts to induce Frank to abandon them and solicited others to assist him in trying to correct the evil habits of his son, and that he would often ask of his friends and acquaintances if they had ever seen his son Frank drinking or gambling, or if they had ever heard of his doing so.    Witness after witness was called, who related nothing further than that the testator frequently during the past four or five years of his life, when he

would meet them, would begin a conversation about his son Frank, and would ask about his conduct and would speak in strong disapproval of his habits, but all with one accord agree that the father at all times evinced the deepest solicitude for his son and seemed greatly pleased at every suggestion of reform that was intimated in his son's favor, and seemed to appreciate every word of praise in his behalf from whatever source it came. Supposedly for the purpose of showing that Mrs. Defoe was in some way instrumental in prejudicing the mind of the testator against the son Frank, John H. Buford, one of the plaintiffs herein, and a son-in-law of the testator, gave evidence that on several occasions when visiting at testator's house he had heard Mrs. Defoe, one of the defendants herein and the principal beneficiary under the will, discuss with her husband the bad habits of their son Frank, and speak quite severely of his drinking and gambling, and also when asked if he had ever heard them (meaning Mr. and Mrs. Defoe) talk about Frank's financial standing, he said: "Well, on one occasion I can remember in company with Mrs. and Mr. Defoe, they were present. *Q.* They were present? *A.* Mr. and Mrs. Defoe were present. They both talked to me about it. They warned me against signing Frank's note and would bring up the question about his visiting saloons and gambling. *Q.* Did they say anything about his lack of reliability? *A.* They told me that I would have to pay it," meaning the note that he had signed with Frank Defoe. Frank Defoe also testified that his father had told him that George H. Gregg (who is another son-in-law of the testator and one of the defendants herein) kept him posted as to what he (Frank) was doing, and that he would inform him whenever he got drunk or would gamble or buy wheat options. One or two witnesses also testified that the testator had told them

that Gregg informed him (the testator) whenever Frank would drink or gamble. Unless the fact that the testator's strong and persistent opposition to the drinking and gambling habit that his son Frank had been indulging in to the great sorrow and regret of the father, as shown by all the testimony, is to be held as evidence that the mind of the testator was possessed of and controlled by prejudice, and that the will as made was the result of that prejudice, then there was no evidence to justify the action of the court in submitting that question to the determination of the jury. But if it can be said that such fact constitutes evidence that the mind of the testator was possessed of and controlled by prejudice such as to influence the disposition of his property after the manner he did, still there is nothing to show that any one of the defendants had anything whatever to do with instilling in the mind of the testator his strong prejudice against the drinking and gambling habits of the son, or if done, that it was for the purpose of influencing the making of the will against the interest of the son and more favorable to the other members of the family.

It would be a sad commentary on family privilege and duty to say that a jury would be authorized to find that a mother had exercised an undue influence over the mind of her husband from the mere naked fact alone that in the presence of one of their sons-in-law she had joined with her husband in a word of warning to that son-in-law to be cautious how he signed notes for what they thought a reckless son on account of his drinking and gambling habit, or because in discussing the habits of that son, the mother in the presence of the father and the son-in-law had criticised quite sharply the son's bad habits of drinking and gambling. These facts in and of themselves or when considered with any and all other of the facts shown

in evidence do not prove or tend to prove the issue that the wife attempted unduly to influence her husband in the matter of making the will in controversy, òr did so influence him, in the least, in the matter of making the will.

The mere fact that the defendant, Mrs. Defoe, in discussing with her husband the bad habits of their son, spoke harshly of his conduct, is no evidence that the wife inspired the deep seated and well grounded prejudice against the son for their indulgence, and much less is it, in and of itself, or when considered in connection with any and all other facts shown, evidence to indicate that what was said or spoken was for the purpose of influencing the mind of the father unduly against his son in the matter of making his will, or that it did so influence him. Neither does the testimony of the various witnesses as to what the testator said to them about Gregg telling him whenever his son Frank would get drunk or gamble, prove or tend to prove that Gregg attempted thereby · to exercise or did exercise an undue influence over the mind of the testator to induce him to make the will as he did, if such statements of the testator could possibly be received as evidence.

But as the declaration of the testator to third parties, as to what Gregg said to him, was not competent as evidence for any purpose, the only thing left that bears the slightest semblance of testimony in the case is the criticisms of the mother on the bad habits of a son, in the presence of her husband and a son-in-law, and a word of warning by her to the son-in-law against signing notes for the son lest on account of the son's bad habits he might not be able to pay them, and leave the burden of doing so upon the son-in-law, and the further fact that the testator was a man of

strong and bitter prejudice against saloons and saloon-frequenting and gambling in all its forms and phases, and was persistent in his opposition to his son's indulgence in what he thought those great vices. If such flimsy stuff is to be held and treated as evidence justifying a jury in defeating the will of a testator, on the ground that he has been unduly influenced in its making against the interest of what the testator thought a profligate son, then no will that was ever made could withstand the assaults of a contest.

The argument of counsel for respondent now, that a jury is authorized to infer undue influence from facts and circumstances shown, is unavailing here to sustain the verdict as rendered. To say what fact or facts the evidence tended to prove was the part of the trial court in the first instance, and as no testimony that was offered, when considered by itself or in connection with any or all the other facts shown tended to prove that issue, or that the testator was unduly influenced in making the will by any of the defendants as charged in plaintiff's petition, the jury had no office to perform, but to return a verdict under the direction of the court. And when commissioned, without adequate facts to make a finding, that it should work the fields of fancy, and return a verdict as in this case, is not wholly to be unexpected.

The judgment of the circuit court will be reversed and the cause remanded with directions that it enter up a judgment establishing the will. BRACE, C. J., and WILLIAMS and MARSHALL, JJ., concur.