ADA LINDSAY et al., Appellants, v. GEORGE F.
SHANER et al.

Division Two, December 31, 1921.

1.  FINDING OF FACT: Statement by Court: On Motion for New
    Trial.  There is nothing in the statute (Sec. 1402, R. S. 1919) re-
    quiring the trial court, in passing upon a motion for a new
    trial, after verdict by a jury, to state his findings in writing,
    or warranting a request for such written statement.  Another
    statute (Sec. 1454, R. S. 1919) requires the trial judge to
    specify the grounds upon which he grants a new trial, but his
    failure to do so does not invalidate the order granting a new
    trial, nor preclude the appellate court from considering all the
    grounds enumerated in the motion.

2.  WILL CONTEST: Prima-Facie Case for Proponents.  Testimony,
    offered by proponents at the beginning of the trial in the will
    contest, tending to show that the will was duly executed on a
    certain date and that testator was sane and of lawful age, is
    sufficient to establish a prima-facie case for proponents, and
    is conformable with right procedure.

Lindsay v. Shaner.

3. **ONE NEW TRIAL: Insufficient Evidence.** The Supreme Court does not interfere with the action of the trial court in granting one new trial for insufficiency of evidence or where the verdict is against the weight of the evidence, unless the discretion of the trial court has been abused; and the granting of one new trial where there is no substantial evidence to support the verdict, and consequently no question for the jury to determine, is not an abuse of the court's discretion.

4. **DEMURRER TO EVIDENCE: Admissions and Assumptions.** On demurrer to the evidence offered at the close of the case, defendant's testimony (where contradicted) is taken as false, and the plaintiff's testimony (unless self-evidently perjured or opposed to the physics of the case) is taken as true, and the court must allow to plaintiff's case the benefit of every reasonable inference of fact arising on all the proof.

5. **WILL CONTEST: Undue Influence: Kind Attention.** Personal attentions rendered by a brother, both before and after the will was executed, to the bachelor testator, whose mind was clear, but whose body was sick; a request by the testator that the brother timely disclose to him the facts concerning his physical condition so that in the event he was going to die he might have opportunity to make his will; a discussion by the brother with the testator of the provisions of the will and advising him in reference thereto, there being no fiduciary relations between them; and the making of memoranda for the will by the brother at the testator's suggestion, do not tend to establish undue influence, although said brother is named as a legatee. The law does not penalize affectionate or humane services.

6. ————: ————: **Inference: Opportunity.** Undue influence may be shown indirectly and may arise as a natural inference from other facts in the case, but it cannot rest on mere opportunity to influence or on mere suspicion.

7. ————: ————: **Confidential Relationship: Brothers.** A confidential relationship between the bachelor testator and a legatee cannot be based on the mere fact that they were affectionate brothers.

8. ————: **Proof of Attestation: By One Witness.** In a will contest proponents do not make out a prima-facie case and do not prove the due execution of the will, if only one of the attesting witnesses is produced and no testimony is offered in explanation of the absence or whereabouts of the other.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck*, Judge.

Lindsay v. Shaner.

AFFIRMED AND REMANDED.

*O. L. Munger* and *E. C. Edgar* for appellant.

(1) In all transactions between persons in whom confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the persons in whom the confidence is imposed to show affirmatively that no deception was practiced; that no undue influence was used; that all was fair, open, voluntary and well understood. Egger v. Egger, 225 Mo. 137. (2) Undue influence need not be shown by direct proof, but may be inferred from facts and circumstances, such as the relation of the parties, the mental condition of the deceased and the character of the transaction. Mowry v. Norman, 204 Mo. 173; King v. Gilson, 191 Mo. 327; Roberts v. Bartlet, 190 Mo. 680; Bradford v. Blossom, 190 Mo. 110; Dausman v. Rankin, 189 Mo. 703; Doughterty v. Gilmore, 136 Mo. 414; Bush v. Bush, 87 Mo. 482. (3) Where there is evidence of undue influence, the burden of proof is upon the proponents. Mowry v. Norman, 223 Mo. 463; Bradford v. Blossom, 190 Mo. 143; Hegney v. Head, 126 Mo. 629. (4) Where the will is unreasonable in its provisions and inconsistent with the duties of the testator with reference to his property and family, this, of itself, will impose upon those claiming under the instrument the necessity of giving some reasonable explantation of the unnatural character of the will. Mowry v. Norman, 204 Mo. 192; McFaddin v. Catron, 120 Mo. 271; Gay v. Gillilan, 92 Mo. 264; Benoist v. Murrin, 58 Mo. 312. (5) It is a suspicious circumstance that the principal beneficiary writes the will, and undue influence may be inferred therefrom. Roberts v. Bartlet, 190 Mo. 702; Harvey v. Sullens, 46 Mo. 151; Carl v. Gabel, 120 Mo. 297.

*James C. Shaner* and *B. H. Boyer* for respondents.

(1) While the question of testamentary capacity is eliminated from the case by the verdict of the jury, yet, re-

viewing the record, it will be seen that there was not only a total failure of proof on the part of contestants as to the lack of such capacity, but overwhelming proof thereof. Gibson v. Gibson, 24 Mo. 227; Riley v. Sherwood, 144 Mo. 364; McFadin v. Catron, 138 Mo. 197; Current v. Current, 244 Mo. 436; Southward v. Southward, 173 Mo. 59; Archbaldt v. Blanchard, 198 Mo. 425; Richardson v. Smart, 152 Mo. 636; Lynch v. Doran, 95 Mich. 409; Sohr v. Lindemann, 153 Mo. 276; Thomasson v. Hunt, 185 S. W. 169; Sanford v. Holland, 207 S. W. 818. (2) On the question of undue influence the law in this State is amply stated in Riley v. Sherwood, 144 Mo. 366; Thompson v. Ish, 99 Mo. 182; Gibson v. Gibson, 24 Mo. 227; McFadin v. Catron, 138 Mo. 218; Sunderland v. Hood, 84 Mo. 293; Maddox v. Maddox, 114 Mo. 36; Riley v. Sherwood, 144 Mo. 366; Seibert v. Hatcher, 205 Mo. 97; Sinnett v. Sinnett, 201 S. W. 887; Sanford v. Holland, 207 S. W. 818; Carl v. Goebel, 120 Mo. 283; Current v. Current, 244 Mo. 436; Southward v. Southward, 173 Mo. 72; Sohr v. Lindemann, 153 Mo. 289; Thomasson v. Hunt, 185 S. W. 167; Gibson v. Foster, 230 Mo. 136. (3) Evidence purporting to show undue influence or incapacity is searched with a critical eye. Turner v. Anderson, 260 Mo. 17, 31. (4) The testimony relative to previous wills made by testator and the disposition he sought to make of his property thereby is very pertinent and significant. Thompson v. Ish, 99 Mo. 182; Sinnett v. Sinnett, 201 S. W. 887. (5) The declarations attributed to testator by the witnesses for plaintiffs both before and after the time of the signing of the will were incompetent for the purpose of establishing undue influence. Gibson v. Gibson, 24 Mo. 228; Cawthorne v. Hayne, 24 Mo. 236; Andrew v. Linebaugh, 260 Mo. 649; Teckenbrock v. McLaughlin, 209 Mo. 547; Hays v. Hays, 242 Mo. 170; Siebert v. Hatcher, 205 Mo. 97; Thompson v. Ish, 99 Mo. 170.

REEVES, C.—The action is a will contest. It involves the usual grounds of testamentary incapacity and undue influence. The issue was made up, as provided by

statute, and submitted to a jury. The jury favored the proponents of the will on the question of testamentary incapacity, and determined adversely to them on the question of undue influence. Proponents moved for a new trial and were successful, whereupon contestants have prosecuted their appeal to this court from the order granting a new trial.

In the order allowing a new trial, the trial court did not specify of record, as required by statute, the grounds on which said new trial was granted, but the bill of exceptions shows that upon oral request the court justified his action as follows:

"That under the definition the courts give us of 'undue influence,' there is no evidence, or no sufficient evidence, to that effect."

Appellants had made a request in writing upon the trial court, in passing upon said motion for a new trial, "to make his findings in writing, stating separately his findings of fact and his findings of the law, as in such cases made and provided by statute."

It was in response to this request that the court made his oral assignment. There is nothing in the statute warranting a request upon the trial court, as above specified. Section 1402, Revised Statutes 1919, makes it the duty of the trial court, at the request of the parties, to state in writing the conclusions of facts found separately from the conclusions of law, where questions of fact are tried by the court. In this case the court was simply passing on the verdict of a jury, and the statute, Section 1454, Revised Statutes 1919, required him to specify the grounds upon which he granted a new trial, but his failure to do so did not invalidate his action and in such case this court may consider all the grounds enumerated in the motion for a new trial. [Metropolitan Co. v. Webster, 193 Mo. 351, 92 S. W. 79.]

However, as the parties have presented the case here upon the theory that the question of insufficient evidence was the only question in the case and as the motion for a new trial properly challenged the sufficiency of the

proof to warrant submission of the case to the jury, we shall dispose of the case in accordance with the theory of the litigants and particularly as our view of the case upon that question precludes the necessity of considering other matters raised in the motion for a new trial.

At the beginning of the trial the proponents of the will offered testimony tending to show its execution on March 9, 1919, and that the testator was sane and of lawful age. This was an effort conformable to our procedure to establish a prima-facie case. [Teckenbrock v. McLaughlin, 209 Mo. 533, l. c. 539; Campbell v. Carlisle, 162 Mo. 634, l. c. 644; Maddox v. Maddox, 114 Mo. 35, l. c. 46; Mowry v. Norman, 204 Mo. 173.]

Thereupon appellants, as contestants below, offered the following testimony in support of their contention that the testator was mentally incapable at the time of executing the will and acted upon the compulsion of undue influence. Contestants are brother, sister, nephews and nieces of testator, and Mrs. Warner Jackson, not related, and contestees are a brother, nephews and a niece.

Irvin J. Shaner was the testator. Though forty-eight years of age at the time of his death, he was a midget in size, being little more than thirty inches tall. Admittedly a shrewd business man, possessing the mentality of a mature man, he had accumulated considerable property, valued at from fourteen to fifteen thousand dollars. Early in life, for his livelihood, he sold photographs of himself and a kinsman of large stature, but later he became a photographer and was engaged in that business at the time of his death. He owned real estate, had several investments and was a member of the board of directors of the Citizens' Bank of Desloge, Missouri, where he lived. He had several brothers and sisters, some living, some dead, and many nieces and nephews. On the 28th day of February, 1919, the "little man," as he was affectionately called and generally known, became ill with the "flu." At first he only complained, finally taking to his bed. He had a room, described as

a little room, with a little bed in it, in the building owned by him, and used as his studio.   There was a residence on the same lot also owned by him, occupied by Mrs. Blanche Jackson, as his tenant, and with her testator boarded.

Mrs. Martha Pigg Drier testified for contestants that she was a nurse by profession and knew the testator; that on March 6, 1919, she was called to nurse him; that he was suffering with pneumonia and that she remained with him until he died, at three minutes before five o'clock on Monday morning, March 10, 1919; that during the time George F. Shaner, sometimes known as Fisher Shaner, one of the contestees and a brother of the testator, was there; that "he was there quite often during the day and night, too;" that he had conversations with witness regarding the condition of testator and talked with witness regarding the necessity of his brother making a will; that he had been talking with Irvin, the testator, about making the will, and asked witness to speak to Irvin about it; that he came to her several times asking to speak to Irvin about the will, "but he didn't discuss how he wanted the will made or anything of that kind."   Witness was not present at the time the will was executed.

Mrs. Blanche Jackson, one of the beneficiaries under the will, testified that she lived in Desloge in a residence owned by the testator and that she was named as a devisee in the will; that she had known testator for fourteen or fifteen years; that he had lived at her house from June 19, 1913, to the date of his death; that she knew about the will being executed on March 9th; that Mr. Garrett, who wrote the will, came to her house and went in the room where testator was, and that this was between 1:30 and two o'clock in the afternoon; that she was with testator at the noon hour while the nurse was at lunch; that "he was very restless and his breathing was dreadfully hard;" that she went back again between 2:30 and three o'clock to call the nurse to the telephone; that Mr. Garrett and Mr. Fisher Shaner (George F. Shaner) were both in

the room and that the testator was lying with his head drooped down on the pillow. Witness did not remain in the room at that time, as having delivered her message she withdrew. She observed, however, that Mr. Garrett (who wrote the will) was sitting by the bed and Mr. Shaner was standing leaning against the wall. Mr. Garrett was writing on paper, which he held on his lap. At four o'clock on the same day witness again saw the testator. The nurse and George F. (Fisher) Shaner were with him. At that time he was breathing hard, and in answer to a question from witness testator said he did not feel any better. Witness saw him again about 5:30 or six o'clock in the afternoon of the same day, and was in the room alone with him, the nurse and family then being at supper. He appeared to be growing worse and addressing witness said "Blanche, I am going to die unless I get better." On being recalled, witness further said that testator in conversation with her made the statement, "Blanche, I have made my will and I didn't make it as I wanted to make it. I left you the house, is all; I wanted to leave you more, but Fisher (George F. Shaner) wouldn't let me. He thought the house was all you deserved."

F. W. Gale, a physician, testified for the contestants as an expert, and in answer to a hypothetical question embodying the physical condition of the testator, at the time he was alleged to have executed the will, said: "It would be impossible for a man in that condition to concentrate his mind long enough to do anything at all. You could momentarily attract his mind for a little while, but it would get away from him. He couldn't transact anything of that kind, a man that near death's door." On cross-examination witness said that the physician who actually saw the testator, could answer more intelligently regarding his mental condition than he.

Isiah W. Shaner, a brother of the testator, testified that George F. Shaner came up to his house and told him about Irvin's death on the morning it occurred. He told

witness that Irvin had made a will and detailed to witness
the circumstances leading up to the execution of the will;
that Irvin had said to him that if it came to a point in
his illness where there might be danger of his dying,
he wanted to know it, and that he had told Irvin he was
going to die, whereupon Irvin requested him to get a
pencil and tablet and he then made memos of testator's
proposed will.   There was another unimportant conver-
sation between witness and respondent George F. Shaner,
which need not be set out here as it does not bear upon
the issues involved.

Ada Lindsay, a sister of testator, testified for appel-
lants that she overheard a conversation between George
F. Shaner and her husband while she was ill, wherein
George F. Shaner apparently urged that she should not
contest the will.   Witness did not finish her statement,
and being excused her testimony is nothing unless sus-
ceptible of that construction.

Laura Thurman testified that she knew the testator
in his lifetime and in January before his death he told
witness that he was going to make a will and said that
Blanche, meaning Mrs. Jackson, had been as good as
a mother to him and that he intended to give her half
of his property, and that he expected his brothers and
sisters to have what his father and mother had left him.
Witness was at the studio the day of the execution of
the will but she did not go into the room where Irvin
was.   She saw George F. Shaner there, as well as Mr.
Garrett, who wrote the will.

Gladys Mostiller testified for appellants that she too
had a conversation with testator in January; that the
question of his will was again mentioned; testator told
her then that he had not made a will and she urged him
to do so.   Testator told her that when he made his will
he was going to give Mrs. Jackson the home, the one
where she was living, and in addition one-half of his
property.

291 Mo.—20

This was all the testimony offered by appellants touching the question of testamentary incapacity or undue influence. Respondents offered a demurrer to this testimony, and being overruled offered testimony tending to show that the testator was always a shrewd business man. Dr. Fuller, the attending physician, said he was called on Tuesday afternoon before testator died on Monday morning, and had charge of him during the entire time until his death; that testator died of bronchial pneumonia; that while his mental condition was slow in action, due to his weakened physical condition, his mind was clear; that on Sunday morning, the day the will was executed, he found him resting fairly well and that his mind was clear; that he saw him again about three o'clock after Mr. Garrett had written his will and that his mind was clear. The cross-examination did not elicit any information to the contrary.

Dr. A. L. Evans of Bonne Terre was called in consultation on Friday, March 7th; he and Dr. Fuller examined the testator and at that time his mental condition was "absolutely normal."

Other witnesses testified that George F. Shaner had been kind to testator from babyhood and that other members of his family were also kind to him.

George Fisher Shaner, one of the respondents, testified for contestees that he had made the memoranda for the testator, from which the will had been prepared by Mr. Garrett; that previously, when he was a single man, he and testator had made joint wills naming each other as beneficiaries. These wills had been destroyed and others written and they too had been destroyed. He gave in detail the conversation with his brother regarding the provisions of his will, and his desires in relation to the erection of a monument at his grave and improvement of the family burying ground. This was all of the important testimony, and at the conclusion respondents offered a demurrer to the testimony and being again overruled the case was submitted to the jury, resulting in a verdict favorable to the proponents of the will on

the question of testamentary incapacity and adversely on the question of undue influence. This verdict against proponents was set aside by the court and contestants prosecuted their appeal to this court.

I.  Appellants concede the rule of this court not to interfere with the action of the trial court in granting one new trial for insufficiency of evidence or where the verdict is against the weight of the evidence. This rule arises from the statute and judicial construction and is applied where the discretion of the trial court below is not abused. In this case the court did not specify of record the ground or grounds of its action, so all the grounds set out in the motion for a new trial may be examined. [Metropolitan Co. v. Webster, supra.]

One New Trial.

II.  The case was briefed and argued here, however, upon the theory that the oral statement of the trial court, above quoted, made at the time he allowed the new trial, aptly put the only question at issue, and as the motion for a new trial complains against the action of the trial court in refusing to grant respondents' demurrers, offered at the close of contestants' case and at the close of the whole case, we accept the trial court's statement as raising the one issue here and this, of course, raises the question on the whole record as to whether or not there was any testimony warranting a submission of the issues involved to the jury. [Turner v. Anderson, 236 Mo. 523, 260 Mo. 1.]

Only Issue.

III.  The jury favored proponents on the question of testamentary incapacity and this question is hardly before us, yet an examination of the record shows that the testimony was all one way on that question and the trial judge should not have submitted that issue to the jury. Appellants' case on that issue does not even rest on a 'fog' of suspicion and con-

Incapacity.

jecture, unless it be on the testimony of Dr. Gale, who testified as an expert, and that was insufficient to present an issue of fact. [Turner v. Anderson, 236 Mo., supra, l. c. 542; Hahn v. Hammerstein, 272 Mo. 248, l. c. 263.]

IV. The jury found that the will in question was procured by the undue influence of George F. Shaner. That is the question, therefore, most stoutly and earnestly urged here and the one we must consider. Was there sufficient testimony to warrant the trial court in submitting this question to the jury? We eliminate the proposition involved in the right of the trial court to exercise his discretion in granting a new trial where the weight and sufficiency of the testimony are debatable and we proceed to consider whether or not, upon the issue here, there was any substantial testimony tending to show undue influence and whether in fact there was a question for the jury. In discussing this question we must advert to the general rule that on demurrer the defendant's testimony (where contradicted) is taken as false and that the plaintiff's testimony (where not self-evidently perjured or opposed to the physics of the case) must be taken as true, and that the court must allow to plaintiff's case on demurrer the benefit of every reasonable inference of fact arising on all of the proof. [Fritz v. Railroad, 243 Mo. 62, l. c. 77; Stauffer v. Railroad, 243 Mo. l. c. 316; Williams v. Railroad, 257 Mo. 87, l. c. 112.]

Tested by the above rules the demurrer of contestees should have been sustained by the lower court, as there was no evidence of undue influence exercised by George F. (Fisher) Shaner over the mind of the testator in the execution of the will in question.

As hereinbefore stated, the testimony showed without controversy that the testator was a shrewd, self-reliant business man. He did not rely upon any one to guide him in his business ventures or dealings. There was no confidential relationship existing between him

and George F. Shaner. The testimony showed that George F. Shaner was solicitous about the testator during his last illness, and that his brotherly solicitude manifested itself by personal attentions, both day and night, and before and after the execution of the will. It was but natural that George F. Shaner should talk to his brother about his will and there was no impropriety in his urging upon him the importance of making a will. Appellants' witnesses had done the same thing, and apparently it was the consensus of opinion that he should make a will. Appellants offered testimony of a conversation between George F. Shaner and Isiah Shaner, brothers of the testator. It appeared that the testator had requested George F. Shaner to disclose to him the facts as to his physical condition so that in the event it appeared that he was going to die, he might have an opportunity to dispose of his property by will. It was proper for George F. Shaner to communicate to him this information. Any other course would have been wrong. There was no impropriety in discussing with the testator certain provisions of his will and advising him with respect thereto. It was not wrong for him to make memoranda at the instance of his sick brother. The testimony was that his mind was clear, but that his body was sick, and if George F. Shaner had been denied the right to make such memoranda, because of his relationship and the fact that he was named as a beneficiary under the will, then who else could have been used by testator to perform this essential service in his last lucid moments before death? The precautions of the law against the danger of undue influence do not foreclose to a near relative and a possible beneficiary the right to render, in cases of this kind, affectionate and humanitarian service. In the case of Andrew v. Linebaugh, 260 Mo. 623, l. c. 661, the court quoted with hearty approval from the case of Defoe v. Defoe, 144 Mo. 458. In the Defoe Case the wife was the principal beneficiary in the will. Contests were brought by one of the sons of the testator. There was testimony that the wife had cautioned testa-

tor about signing notes for the contestant son and had quite harshly criticised him in the presence of testator. The court said: "If such flimsy stuff is to be held and treated as evidence justifying the jury in defeating the will of a testator, on the ground that he had been unduly influenced in its making . . . then no will that was ever made could withstand the assaults of a contest." And again the court quoted from the case of Maddox v. Maddox, 114 Mo. l. c. 48, as follows:

" 'It would be a great reproach to the law, in its jealous watchfulness over the freedom of testamentary dispositions, if it should deprive age and infirmity of the kindly ministrations of affection or of the power of rewarding those who bestow them.' We hope it will never be that the visits of a son to an aged and infirm parent will be looked upon with suspicion and attributed to selfish motives."

In this case, as said, there was no testimony that respondent George F. Shaner had ever managed the business affairs of the testator, nor was there the slightest evidence of the dominance of his mind over that of the testator at the time the will was made or at any other time. Testator was a director in the Citizens' Bank of Desloge and, being active in the affairs of the bank, most naturally called for one of the officials of that institution, and that official, at his instance, prepared his will and was one of the attesting witnesses. While it is true that undue influence may be shown indirectly and may arise as a natural inference from other facts in the case, yet it must not rest on mere opportunity to influence or on mere suspicion, for as was aptly said in the case of Teckenbrock v. McLaughlin, 209 Mo. 533, l. c. 551:

"There must be somewhere proof of undue influence, itself either in fact or presumptively. To be effective, it ought to be sufficient to destroy the free agency of the deceased at the time of making the will. It must not be merely the influence of natural affection; for affection is a stream that presumably flows at all times and its waters are under no ban known to the law. There must be

present and in active exercise overpersuasion, coercion or force, fraud or deception, breaking the will power of the testator. [Myers v. Hauger, 98 Mo. 433; Dougherty v. Gilmore, 136 Mo. 414; Schierbaum v. Schemme, 157 Mo. 1; Tibbe v. Kamp, 154 Mo. l. c. 579; Crowson v. Crowson, 172 Mo. 691, l. c. 702; McFadin v. Catron, 120 Mo. l. c. 275.]''

Appellants did not bring their case within the established rules on the subject of undue influence, and we must hold that the trial court erred in submitting that question to the jury, and to correct the error properly sustained respondents' motion for a new trial. [Turner v. Anderson, 236 Mo. supra, l. c. 541; Fulton v. Freeland, 219 Mo. 494; Land v. Adams, 229 S. W. 158, l. c. 163.]

V. It is argued that there was a presumption of undue influence because of the relationship of George F. Shaner to the testator. The fallacy of this contention lies in the fact that there was no proof whatever of a *confidential* relationship. Respondents therefore were not Confidential required to overcome a presumption that did Relationship. not exist in this case and the appellants did not have the benefit of such presumption to aid them to go to the jury. This case does not fall within the doctrine announced in the case of Rayl v. Golfinopulos, 233 S. W. 1069, nor does it fall within the doctrine of the case of Egger v. Egger, 225 Mo. 116, as contended by appellants. In the above cases a confidential relationship was properly assumed and taken into consideration by the court.

VI. Upon the record before us this court would be justified in exercising its right to direct final judgment in favor of respondents and order the probating of the will of Irvin J. Shaner in solmen form (Sec. 1514, R. S. 1919; Dickson v. Rouse, 80 Mo. 224, l. c. 228; Rice Due v. Shipley, 159 Mo. 399; Teckenbrock v. Execution. McLaughlin, supra, l. c. 551), but we find ourselves confronted with a serious question as to whether or not respondents, in the trial below, sustained their burden of proof. This is a statutory

action and under our law a proceeding to contest a probated will is in the nature of an appeal and a trial *de novo,* and the proponents of the will must prove its due execution, the lawful age of the testator and his sanity. Section 507, Revised Statutes 1919, requires that wills should be attested by two or more competent witnesses subscribing their names thereto, and Sections 520 to 524 inclusive provide how the proof of a will shall be made. If any of the witnesses are dead or insane, or their whereabouts unknown, such facts must be shown. In this case *one* of the attesting witnesses testified, but the other was not produced and no testimony was offered as to the reason for her absence or as to her whereabouts. This was not sufficient. [Major v. Kidd, 261 Mo. 607; Bell v. Smith, 271 Mo. 619, 197 S. W. 128; Rayl v. Golfinopulos, supra; Bensburg v. Washington University, 251 Mo. 641, l. c. 656.]

For the reasons assigned above, the judgment of the trial court is affirmed and the case is remanded for a new trial not inconsistent with the views herein expressed, and appellants may have, if they so desire, another opportunity to offer testimony on the issues made up by the pleadings. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur.